*In re* MARRIAGE OF ALICE A. MARTINS, Petitioner-Appellee, and EDWARD MARTINS, Respondent-Appellant.

Second District    No. 2—94—0084

Opinion filed January 10, 1995.

Robert W. Burnett and Cynthia T. Morgan, both of Robert W. Burnett, Ltd., of Naperville, for appellant.

Brittain & Ketcham, P.C., of Elgin, and Bruce K. David, of David & Associates, of Carpentersville, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The respondent, Edward Martins, appeals from an order of the circuit court of Kane County denying his petition to modify custody. The respondent contends that: (1) the trial court erred in not finding by clear and convincing evidence that the changes in circumstance

which had arisen since the last custody order indicated that it would serve the best interests of the parties' minor children to be in the sole custody of the respondent; and (2) the trial court's decision to allow residential custody to remain with the petitioner was against the manifest weight of the evidence and constitutes an abuse of discretion.

The record reveals the relevant facts to be as follows. The petitioner, Alice A. Martins, and the respondent were married in Kane County, Illinois, on December 6, 1981. This was the first marriage for both parties. Two children were born to the parties during their marriage: Danielle, who was born on August 9, 1986, and Courtney, who was born on May 1, 1988.

The petitioner filed a petition for dissolution of marriage in the circuit court of Kane County on November 20, 1989. On May 11, 1990, judgment was entered dissolving the marriage and granting them joint custody of the children. Neither party has remarried.

On August 16, 1991, the petitioner filed a petition for modification of the judgment of dissolution of marriage, requesting that she be granted physical custody of the children. Thereafter, the respondent filed a response to the petition, requesting that physical custody of the children be granted to him. Following a hearing on the petition on August 22, 1991, the trial court ordered that the petitioner would have physical custody of the children during the week and the respondent would have physical custody of the children during weekends.

Shortly after the August 22, 1991, hearing, the petitioner informed the respondent that she was a lesbian. The respondent, without the petitioner's prior approval, later arranged for the minor children to receive counseling to assist the children with their questions concerning their mother's homosexuality among other things. The minor children began counseling in the summer of 1992, with Dr. Margo Warren-Kennedy, a clinical psychologist.

On March 4, 1993, the respondent filed a petition to modify custody. In his petition, the respondent alleged that there had been a substantial change in the petitioner's conduct and circumstances which was seriously endangering the physical, mental, moral or emotional well-being of the minor children. The respondent represented that the petitioner had related to him that she had been engaged in conjugal, homosexual relationships with persons residing in the same home as the minor children. He stated that the minor children had undergone treatment and counseling to cope with the stress brought upon them as a result of the conduct of the petitioner. He requested that the joint custody arrangements and residential

custody time periods be modified by the court so that sole custody of the minor children be awarded to him.

In response to the respondent's petition to modify custody, on April 8, 1993, the court appointed Marmarie Kostelny as guardian *ad litem* (hereafter guardian) for the minor children and ordered that she file a report with the court. The guardian conducted an investigation consisting of personal interviews with the petitioner, the respondent, and the minor children, a telephone interview with Dr. Warren-Kennedy, a review of the children's school report cards, and a review of all available court records. The guardian filed her report with the court on August 26, 1993. The report reflects, in part, that since the dissolution of the parties' marriage, several roommates had resided in the petitioner's three-bedroom home. The petitioner's lesbian lover, Tracy Schwartz, had resided in the home for approximately two years; a lesbian by the name of Brook had resided in the home for two months; and a heterosexual named Helen had also resided in the home. Two other lesbians, Michelle and Theresa, frequented the home, but had not lived there. The minor children expressed concern regarding all of the women coming in and out of the house. They perceived that their mother was less attentive to them in comparison to her friends and they did not like to have baby-sitters. In her report, the guardian recommended that joint custody be continued, but that primary physical custody be transferred to the respondent. Her recommendation was based upon the stated preference of the minor children to reside with their father on weekdays and their belief that if they were only to see their mother on weekends they would be more of a priority to her.

Trial commenced on December 6, 1993. Since more than two years had passed since residential custody of the minor children had been awarded to the petitioner, the court determined on the opening day of trial that it would apply the best-interests-of-the-children standard in considering the respondent's petition to modify custody.

The respondent testified in his case in chief that he lived alone in a home located across from a forest preserve in Rockford, Illinois. He further testified that he was employed as a loan officer and that this position provided him with a flexible work schedule. The respondent testified concerning the petitioner's various roommates, stating that at the time the petitioner was awarded residential custody of the minor children in 1991 the petitioner was residing with Tracy Schwartz. He testified to his belief that the petitioner's relationship with the minor children had diminished since January 1992 and that since that time, on occasion, the children had not wanted to return to the petitioner's house after visitation with him. He also testified that

in February 1992 he began to notice a difference in the children's hygiene. He noted a change in the children's eating habits and cited to various occasions when he believed the children's medical needs were not met by the petitioner. The respondent stated that, during a typical visitation weekend, he takes the children to counseling, the children help feed the animals on his homestead and attend horse shows, and he prepares all meals that the children eat at home. He testified that he had been active in the children's current schooling and, if he were awarded custody of the children, they would attend St. Patrick's school, located nearby.

Beverly Martins, the respondent's mother, testified on behalf of the respondent. Martins testified that she saw the minor children weekly and from her observations characterized the respondent's relationship with the children as "great." She stated that in November 1993, when the children were visiting with her, they told her that they did not want to return to the petitioner's house. She also testified that she had noted a change in the children's behavior in the past two years and cited to instances of peculiar behavior in the children. On cross-examination, Martins testified that she had testified at a previous custody hearing that the petitioner was a good person and had been a good mother up to the time of the dissolution.

The respondent next introduced the testimony of Dr. Warren-Kennedy, the children's therapist. Dr. Warren-Kennedy testified that she is a clinical psychologist, with a primary focus on working with children, including those with emotional problems associated with dissolution. She stated that she had treated hundreds of children in her private practice. She testified that the respondent had arranged for her to counsel the minor children since May 31, 1992. Dr. Warren-Kennedy stated that she completed a psychological evaluation of the children, which included intellectual tests. She testified that the test results showed both children to have a superior range of intelligence. Dr. Warren-Kennedy cited to instances where Danielle told her that she wanted to live with her dad and go to school there and that she could visit her mom on weekends when they would have more time together. Dr. Warren-Kennedy cited to instances where Courtney told her that she wanted to spend more time with her mom, and not with the baby-sitter. She testified that in 1992 the petitioner called her and reported that she had been having some serious behavioral problems with Danielle. On cross-examination, Dr. Warren-Kennedy stated that recently Danielle stated on one occasion that she wanted to stay with her mom during the school year.

Ms. Kostelny, the court-appointed guardian, also testified on behalf of the respondent. Kostelny testified that she had been licensed

to practice law in Illinois since 1985, was employed with a local law firm since 1986, and had been a partner there for the last three years. She testified to the contents of her report and to the meetings which she had with the parties prior to writing the report. Kostelny stated that circumstances had changed since the custody determination in August 1991; the petitioner's lifestyle had changed and the children's behavior had changed, requiring treatment for the minor children. Kostelny testified that Danielle told her that she liked being at her father's house, that she wanted to be with her father during the summer and for five days every week, and that she wanted to be with her mother two days every week. Kostelny stated that Courtney also had told her that she wanted to live at her father's house. Kostelny testified that the children's custody preferences should be given weight. She did not opine that the petitioner was unfit or an improper person to have custody. Kostelny stated that Danielle had complained to her that, unlike the respondent, the petitioner spoke negatively about the respondent while in the presence of the minor children. Kostelny recommended that it would be in the best interests of the minor children that they reside with their father during the week and visit with their mother on some sort of weekend schedule.

The respondent testified as an adverse witness and stated that he had been late with child support payments on two different occasions, once because the money had been applied toward counseling fees for the minor children. He also stated that he had been an audience participant on the Oprah Winfrey show in November 1991 and that he had appeared on the show because he did not want other people who might not know what their sexual preference was to get into a marriage with a heterosexual and ruin the lives of their spouse and children. When asked about his personal feelings toward the petitioner being gay, he responded that she could be gay if she wants. As to his feelings as to whether it was morally right or wrong, he testified that he did not think God intended for people of the same sex to be together, but if someone had a sexual preference toward the same sex, what they did behind closed doors was their own business. On re-cross-examination, the respondent admitted to having left a derogatory telephone message on the petitioner's answering machine in December 1992, knowing that the minor children had access to the answering machine.

Tracy Schwartz testified on behalf of the petitioner. Ms. Schwartz testified that she had known the petitioner for approximately 15 years and was a former roommate and lover of the petitioner. She stated that she and the petitioner never slept in the same room when the children were present with the exception of two occasions. She

testified that she moved out of the petitioner's residence in April 1992 because the couple had problems, one of which was that the petitioner would not leave the minor children with the baby-sitter so they could go out during the week. Schwartz characterized the petitioner's relationship with the children as "very good."

Helen Spack also testified on behalf of the petitioner. Spack testified that she had known the petitioner for approximately seven years and was a friend of the petitioner. She testified that while she had been a former roommate of the petitioner on two separate occasions, they were not lovers. Spack testified to instances where the children had returned from visits with the respondent dressed inappropriately for the weather and with uncompleted homework.

The petitioner testified that she resided in Carpentersville, Illinois, where she had resided since October 1987. She testified that prior to the August 1991 hearing the respondent had harassed her by accusing her of being a lesbian but that she had denied admitting her lesbianism until the month after the hearing because she thought the respondent would become revengeful. She stated that she chose to disclose her lesbianism despite the effect it might have on the children and that she had been afraid that the minor children were going to hear it from other children on the street. The petitioner testified that she did not become aware that the children were treating with Dr. Warren-Kennedy until after they had already been to see her. She stated her belief that the children needed counseling, not because she is a lesbian, but because they had parents who could not get along and the children were confused. She stated that it was necessary to have all of the roommates she previously had because she needed the rent money and could never count on her child support check. On cross-examination, the petitioner testified that she had never been without child support money, except on one occasion. She later stated that there was no reason why she could not have had one roommate sign a lease and stay in the home for a one-year period. The petitioner testified that the children often came home filthy from visits with the respondent, but testified on cross-examination that she was aware that the children spent time with horses owned by the respondent and expected that they would get dirty doing so.

On the last day of trial, December 14, 1993, the judge spoke to both of the children *in camera*. Courtney testified that she liked going to see Dr. Warren-Kennedy, liked going on field trips with the horses when she was at the respondent's home, and liked her mother's friends, Tracy and Helen. She stated no preference for residing with one parent over the other. Courtney told the judge that the petitioner spoke negatively about the respondent. Danielle told the

judge that she did not get much time during the week with her mom. She told the judge on two occasions that she wanted to reside with her father, that she would get to go to a Catholic school, and would prefer her father's baby-sitter to that of her mother. She stated that she liked Tracy and Helen. She also stated that her mom kissed Danielle and Courtney and that her mom kissed Tracy but that it did not bother her. Closing arguments were heard by counsel for the parties and by the guardian, after which time the court explained its findings and entered an order denying the respondent's petition.

■ Before reaching the merits of this appeal, we note that the record submitted to this court is in violation of Supreme Court Rule 321 (134 Ill. 2d R. 321). Rule 321 sets forth that which is to be provided by a movant on appeal. While the record submitted to this court on appeal complies with the basic requirements of Rule 321, it does not include the transcripts of the hearing conducted in the trial court on December 13, 1993, or December 14, 1993. The parties have cited to these transcripts in their briefs. Accordingly, we must first determine whether the absence of these transcripts precludes proper review in this court.

The very nature of an appeal dictates that the reviewing court must have a sufficient record before it to determine whether the error claimed by the appellant exists. The burden rests on the appellant to provide a sufficient record to support the claim of error, and, in the absence of such a record, the reviewing court will presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92). Nevertheless, this court has held previously that despite the fact that an incomplete record requires this court to presume that the evidence omitted supports the decision of the trial court, it does not lead to the conclusion that all cases require a complete transcript of the proceedings on the merits (*Brandel Realty Co. v. Olson* (1987), 159 Ill. App. 3d 230, 234). Economy is best served by only requiring that the record on appeal contain that which is necessary. *Brandel Realty Co.*, 159 Ill. App. 3d at 234.

We find that the record on appeal, although incomplete, contains that which is necessary to determine whether the trial court erred in denying the respondent's petition. The failure to include the transcripts in the record therefore does not preclude appellate review. As the citations to excerpts of the December 13, 1993, and December 14, 1993, proceedings found in the parties' briefs are not conflicting, we will rely upon the briefs for such evidence. Any doubts which arise from the incompleteness of the record, however, are to be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392.

■ As the instant action involves a post-dissolution modification of custody, it falls under section 610 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/610 (West 1993)). Section 610(b) of the Dissolution Act provides, in pertinent part:

> "The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement *that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child.*" (Emphasis added.) (750 ILCS 5/610(b) (West 1992).)

(See *In re Marriage of Engelbach* (1989), 181 Ill. App. 3d 563, 570.) This statute reflects a legislative presumption in favor of the custodial parent in order to promote stability and continuity in the child's environment. *In re Marriage of Eldert* (1987), 158 Ill. App. 3d 798, 805.

Here, based upon the facts that had arisen since the August 22, 1991, custody determination, the trial court found that a change had occurred in the circumstances of the children. However, the trial court did not find that modification of the prior custody arrangement was necessary to serve the best interests of the minor children. Where a change has occurred in the circumstances of the child or his custodian, the court's determination of custody will not be disturbed upon review unless it was against the manifest weight of the evidence or there has been a clear abuse of discretion. *In re Marriage of Seymour* (1990), 206 Ill. App. 3d 506, 512.

The respondent contends that the trial court erred in not finding by clear and convincing evidence that the changes in circumstance which had arisen since the last custody order indicated that it would serve the best interests of the minor children to be in the sole custody of the respondent. The respondent further contends that the court's decision to allow residential custody to remain with the petitioner is against the manifest weight of the evidence and constitutes an abuse of discretion.

■ Section 602 of the Dissolution Act sets forth factors which must be considered by the court in determining the best interests of the children. (*In re Marriage of Hazard* (1988), 167 Ill. App. 3d 61, 69.) Section 602(a) provides, in pertinent part:

> "(a) *** The court shall consider *all relevant factors* including:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved;

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person; and

(7) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." (Emphasis added.) (750 ILCS 5/602(a) (West 1992).)

The factors enumerated in section 602(a) are not an exclusive list of factors. *In re Marriage of Fahy* (1991), 208 Ill. App. 3d 677, 688-90.

■ With respect to the first statutory factor, the wishes of the parents as to custody, both parents wished to have custody of the minor children. Accordingly, the first factor did not favor either party.

As to the second factor, the wishes of the children as to their custody, the evidence reflects the repeated preferences of the minor children to reside with their father during the weeks and to reside with their mother during the weekends. The record reflects that Danielle and Courtney expressed this preference to the guardian, with Danielle also having expressed this preference to Dr. Warren-Kennedy and to Judge Edmondson. Illinois cases are clear in holding that a mature child's preference should receive considerable weight when based on sound reasoning. (*In re Marriage of Valter* (1989), 191 Ill. App. 3d 584, 590.) Thus, we find that the second factor weighed heavily in favor of the father.

The third factor is the interaction and interrelationship of the children with their parents, their siblings and any other person who may significantly affect their best interest. The children's relationship with each other was not at issue. Moreover, the record reflects that both the petitioner and the respondent are fit parents who love their children. We find, however, that the trial court failed to evaluate fully the impact of the petitioner's lesbianism on the children. A mother's homosexual relationship is a proper factor to be considered in determining custody under section 602(a)(3) of the Dissolution Act (*In re Marriage of Williams* (1990), 205 Ill. App. 3d 613, 619). Moreover, this court has previously held, in *In re Marriage of Diehl* (1991), 221 Ill. App. 3d 410, 426, that an intimate cohabitation relationship of a parent, be it heterosexual, homosexual or lesbian in nature, is a

proper factor to be considered by the trial court in making a custody determination. Here, the petitioner chose to disclose her homosexuality to respondent only after the August 22, 1991, hearing which had resulted in an award of residential custody of the children to the petitioner. In considering the respondent's subsequent petition to modify custody, the court determined that while the petitioner's lesbian lifestyle constituted a change in circumstance, it had not adversely affected the minor children. We find the clear and convincing evidence shows otherwise. The petitioner's lifestyle had adversely affected the children. Since the petitioner admitted her lesbianism, she had not spent as much time with or rendered the same care to the minor children as she had prior to pronouncement of her gay life-style. The minor children had been left to deal with the issue of their mother's lesbianism and had perceived themselves to be less of a priority to their mother. These emotional struggles caused a change in the behavior of the minor children, particularly Danielle, and necessitated ongoing counseling with Dr. Warren-Kennedy. Therefore, we find that the third factor weighed in favor of changing residential custody to the father.

The fourth factor is the children's adjustment to their home, school, and community. The evidence shows that the petitioner had had numerous female roommates, gay and nongay, since the time of the dissolution. Such circumstances did not serve to create a stable home environment for the minor children. The record reflects their complaints that the petitioner had not spent enough time with them and that they did not like all of the roommates moving in and out of the home. Both children expressed a desire to live with the respondent. As to their schooling, the minor children were performing satisfactorily in their present school, but both expressed a desire to attend the Catholic school located near the respondent's home. Accordingly, we find that the fourth factor likewise favored the transfer of residential custody to the respondent.

The fifth factor, the mental and physical health of the individuals involved, was not at issue with respect to the petitioner or respondent. Likewise, the physical health of the minor children was not at issue. As to the mental health of the minor children, the children required ongoing counseling as a result of their mother's acknowledgement of her lesbianism. The minor children, particularly Danielle, displayed various instances of behavioral problems which arose only after the petitioner pronounced her lesbianism to the children. Thus, the fifth factor also favored the respondent.

The sixth factor, the physical violence or threat of physical violence, was not at issue. The seventh factor is the willingness and

ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and child. There is evidence to suggest both that the petitioner has verbally maligned the respondent in the presence of the minor children and that the respondent has maligned the petitioner in messages left on the petitioner's answering machine. The sixth factor therefore does not favor either party.

Another factor to be considered here is the report submitted to the trial court by the guardian, a neutral court-appointed party. The guardian concluded that it would be in the best interests of the minor children that the joint custody arrangement continue, but that residential custody be transferred to the respondent. The guardian's recommendation was the result of a series of personal interviews with the interested parties and a review of the court records. We find that her recommendation was supported by the evidence and should have been given substantial consideration by the trial court; instead, it was seemingly disregarded.

Our analysis of the foregoing factors leads us to conclude that the trial court erred in not finding by clear and convincing evidence that the changes in circumstances indicated that it would be in the best interests of the minor children to modify the custody arrangement. Most of the statutory factors weighed heavily in favor of finding that the best interests of the minor children would be served by transferring residential custody of the children to the father. We find the trial court's decision to allow the existing joint custody arrangement to remain unchanged to be against the manifest weight of the evidence. However, we would not go so far as to terminate the joint custody rights of the petitioner. Rather, joint custody should continue, residential custody should be awarded to the respondent, and the trial court should conduct further proceedings to determine the physical custody to be allocated to the petitioner.

For the foregoing reasons, we reverse the December 14, 1993, order of the trial court denying the respondent's petition to modify custody and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

BOWMAN and DOYLE, JJ., concur.