*In re* PARENTAGE OF R.M.F., a Minor (Julie Forsell Taylor, Petitioner-Appellee and Cross-Appellant, v. Larry Robert Edward Jones, Respondent-Appellant and Cross-Appellee).

Second District   No. 2—94—1395

Opinion filed September 14, 1995.

Gawain Charlton-Perrin and Steven H. Mevorah, of Steven H. Mevorah & Associates, both of Lombard, for appellant.

Kevin G. Drendel and Susan B. Tatnall, both of Drendel, Tatnall, Hoffman & McCracken, of Batavia, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Respondent, Larry Robert Edward Jones, appeals the order of the circuit court of Kane County granting the petition for leave to remove a minor child from the State of Illinois filed by petitioner, Julie Forsell Taylor. Petitioner cross-appeals the order of the circuit court of Kane County declaring that section 609 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609 (West 1994)) (Marriage Act) applies to cases arising out of the Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 1994)) where the parties were never married. We affirm in part and reverse in part.

On August 19, 1990, R.M.F. (minor child) was born in Aurora, Illinois. The father and mother of this child are respondent and petitioner, respectively. Petitioner and respondent were never married, and they only lived together for a short period of time while petitioner was pregnant. They have not lived together since that time, and respondent was not present when the minor child was born.

On November 9, 1990, petitioner filed a petition to determine the existence of a father/child relationship pursuant to the provisions of the Parentage Act (750 ILCS 45/1 *et seq.* (West 1994)). Said petition requested child support and contribution to the expenses of pregnancy, delivery, and other medical costs. The trial court declared respondent to be the father of the minor child and ordered that respondent pay child support in the amount of $50 per week. The trial court further ordered respondent to procure medical insurance and

pay petitioner $325 for costs associated with petitioner's pregnancy and delivery.

Following the entry of the original order, respondent was often in arrears on his child support obligations. On June 4, 1992, petitioner filed a rule to show cause why respondent should not be held in contempt for failure to pay child support. Respondent subsequently filed a petition for visitation. It appears from the record that respondent then became current on his child support obligations. Since then, he has consistently paid his support obligations. The trial court granted respondent reasonable visitation with the minor child which respondent has regularly exercised.

On April 23, 1994, petitioner married David Taylor (husband), who is a carpenter by trade. At his most recent job, he earned $12 an hour as a nonunion carpenter. Petitioner is a trained surgical technician and was most recently employed by Dreyer Medical Center for $10 per hour. Petitioner and her husband resided together in a two-bedroom home in Genoa, Illinois. They sold the Genoa home on August 13, 1994, because it had become too small for their needs. They have not yet purchased another home in Illinois.

Petitioner and her husband traveled to Phoenix, Arizona, on August 19, 1994, to investigate the possibility of relocating there. They were in Arizona until August 29, 1994. While there, they found a home they liked in Fountain Hills, Arizona, and entered into a contract to purchase the home for $101,550. They enrolled the minor child in a preschool in Fountain Hills. Both petitioner and her husband secured employment while in Arizona. Petitioner was offered a position which paid $14 per hour as a surgical technician. Petitioner's offer was rescinded, however, due to her inability to leave Illinois until the removal issue was resolved. Her husband was offered a position which paid $14 per hour with the possibility of a rapid increase to $18 per hour.

Upon petitioner's return to Illinois, she contacted respondent to discuss her impending move. Respondent objected to the move. Subsequently, petitioner became aware that she might be required to seek permission from the court before removing the minor child from the State of Illinois. Petitioner filed a petition for leave to remove the minor child from the State pursuant to section 609 of the Marriage Act. (750 ILCS 5/609 (West 1994).) Petitioner also filed a motion for a declaratory judgment that she was not required to seek court approval pursuant to section 609 of the Marriage Act, because the natural father and natural mother had never been married to each other.

The trial court granted the petition to remove the minor child

from the State of Illinois. The court made the following specific findings: (1) petitioner and her husband would both be able to find higher paying jobs in Arizona; (2) petitioner's plan to stay home with the child for an initial period of time would enhance the child's quality of life; (3) the living conditions in Arizona are comparable to those in Genoa; (4) respondent's motivation in resisting the petition is not improper; (5) petitioner's motivation in seeking the removal was not to frustrate respondent's visitation rights; and (6) the visitation with respondent can be enhanced by allowing longer blocks of visitation with the child. The court further declared that section 609 of the Marriage Act applied to those situations in which the parties had never been married and the custodial party was seeking to remove the child from the State of Illinois. This timely appeal and cross-appeal followed.

On appeal, respondent argues that the trial court's granting of the petition to remove the minor child from Illinois was against the manifest weight of the evidence. Respondent further argues that the trial court improperly applied the factors set forth in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 325-27.

■ Section 609(a) of the Act provides that "[t]he court may grant leave *** to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children." (750 ILCS 5/609(a) (West 1994).) In a removal case, the paramount question is whether removal is in the best interests of the child. (*Eckert*, 119 Ill. 2d at 325.) When making a determination as to the best interests of the child, there is no bright line test; rather, the decision must be made on a case-by-case basis, depending, to a great extent, on the circumstances of each case. (*Eckert*, 119 Ill. 2d at 326.) A trial court's determination as to the best interests of the child will not be reversed on appeal unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *Eckert*, 119 Ill. 2d at 328.

■ In making a determination as to the best interests of the child, the trial court should hear any and all relevant evidence. (*Eckert*, 119 Ill. 2d at 326.) Factors which should be considered by the trial court include the following: (1) whether the proposed move will enhance the general quality of life for both the custodial parent and the child; (2) the motives of the custodial parent in pursuing the removal; (3) the motives of the noncustodial parent in resisting the removal; (4) the visitation rights of the noncustodial parent; and (5) whether a realistic and reasonable visitation schedule can be reached if the move is allowed. *Eckert*, 119 Ill. 2d at 326-27.

Respondent argues that the evidence presented does not show that removal would enhance the general quality of life for the minor child. Respondent argues that petitioner is seeking to move to Arizona to frustrate his visitation rights and to improve her own general quality of life. Respondent correctly notes that it is insufficient to focus only on the improvement of the custodial parent's life. (See *In re Marriage of Berk* (1991), 215 Ill. App. 3d 459, 465-67.) Rather, the improvement in the custodial parent's quality of life is only important insofar as it increases and furthers the child's quality of life. (*Berk*, 215 Ill. App. 3d at 465.) Evidence which a court may consider in determining whether the quality of life of the parent and the child would be enhanced includes the possibility of a higher paying job, better schools, and improved general opportunities. See *In re Marriage of Pfeiffer* (1992), 237 Ill. App. 3d 510, 513-14.

In the case at bar, the trial court focused not only on how petitioner's life would improve, but also recognized the fact that there is a connection, albeit indirect, between the custodial parent's quality of life and the child's quality of life. The court considered the fact that both petitioner and her husband would be able to get higher paying jobs in Arizona. In arriving at such a conclusion, the court also recognized that petitioner's husband would have an extended working season due to the year-round warm weather in Arizona.

The court also recognized that petitioner testified she would stay home with the minor child for a period of time because her employment offer had been withdrawn. The court found that the fact petitioner would stay home with the minor child would be directly to the child's benefit. The court found that the minor child's educational opportunities in Arizona were roughly the same as those in Genoa. The court also found that the minor child's living conditions and the general activities available to him would also be comparable to those in Genoa.

The second factor the court should consider are the motives of the party seeking removal. (*Eckert*, 119 Ill. 2d at 326-27.) The trial court found that petitioner's motives in seeking the removal were not to frustrate or defeat respondent's visitation rights. There was little evidence which would tend to indicate that petitioner had ever attempted to restrict respondent's visitation with the minor child. Respondent presented little if any evidence which would indicate that petitioner had improper motives in seeking to move to Arizona.

Evidence was presented that both petitioner and her husband would be able to secure higher paying jobs in Arizona. While petitioner did purchase a home in Arizona prior to these court proceedings, there was no evidence which would indicate that she

was aware that she might be required to seek the court's approval to remove the minor child from Illinois. After a review of the record, there is no evidence to support respondent's argument that the removal action was brought to defeat his visitation rights.

Next, we consider respondent's motives in resisting the petition for removal. (*Eckert*, 119 Ill. 2d at 327.) The trial court found that respondent was a caring father and that his actions in resisting the petition were not improper. It appears from a review of the record that respondent and the minor child were relatively close. Respondent visited with the minor child every other weekend and would engage him in various activities, including playing baseball, going to the park, and going to the zoo. Respondent testified that he opposes the removal because he wanted to be able to see his son grow up and maintain a close relationship with him. Respondent fears that if the minor child moves to Arizona, he would be unable to see him as frequently and their relationship would suffer. Thus, there was no evidence that respondent's motives in resisting the removal were improper.

The next two factors which a court should consider are related. A court should examine respondent's exercise of his current visitation rights as well as whether a reasonable and realistic visitation schedule can be reached if the move is allowed. (*Eckert*, 119 Ill. 2d at 327-28.) The court found that respondent had consistently exercised his visitation rights since the visitation order was entered. The court further found that respondent's relationship with the minor child would be improved because he would be able to see the minor child for extended blocks of time as opposed to the current visitation schedule of every other weekend.

Respondent has consistently exercised his visitation rights and appears to have a good relationship with his son. However, the trial court has set forth a reasonable and realistic visitation schedule, requiring that petitioner would be initially responsible to pay for the minor child's transportation to see his father. The trial court granted respondent visitation for five weeks in the summer, one week at Christmas, and one week in the spring. The trial court also ordered that respondent's summer visitation be increased by one week each year until respondent has eight weeks' visitation in the summer.

■ The trial court properly considered all relevant factors in making its decision. The presumption in favor of the trial court's decision is compelling in such cases and should not be disturbed merely because we might arrive at a different conclusion. (See *Eckert*, 119 Ill. 2d at 330.) We should not disturb the determination of the trial court unless it has resulted in manifest injustice or is against the

manifest weight of the evidence. (*Eckert*, 119 Ill. 2d at 330.) After a thorough review of the record, we are unable to conclude that the trial court's decision granting the petition for removal was against the manifest weight of the evidence.

We turn now to petitioner's cross-appeal. Petitioner argues that section 609 of the Marriage Act has no application in a situation where the parties were never married. This is purely a question of law, and, thus, we review the issue *de novo*. (*S.B. Lexington, Inc. v. Near North Insurance Agency, Inc.* (1993), 244 Ill. App. 3d 1023, 1030.) Petitioner argues that to require a custodial parent to file an action for removal chains that parent to the State while the noncustodial parent is free to move wherever he desires. Petitioner correctly points out that this is an issue of first impression in Illinois. A review of the legislative history behind the passage of sections 14 and 16 of the Parentage Act has not been helpful in resolving this issue.

The Parentage Act contains no provisions dealing with removal actions brought on behalf of children from nonmarital relationships. Section 14 provides that a judgment pursuant to the Parentage Act "may contain provisions concerning the *custody and guardianship* of the child, [and] *visitation privileges* with the child, \*\*\* which the court shall determine in accordance with the relevant factors set forth in the [Marriage Act] \*\*\* and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child." (Emphasis added.) (750 ILCS Ann. 45/14(a)(1) (Smith-Hurd Supp. 1995).) Section 16 of the Parentage Act also provides that the court retains jurisdiction to modify any order of *custody* or *visitation* so long as the modification is in accordance with the provisions contained in the Marriage Act. 750 ILCS 45/16 (West 1994).

Respondent argues that removal actions brought pursuant to the Parentage Act implicitly incorporate the provisions of section 609 of the Marriage Act. Respondent further argues that because visitation and custody (two items specifically enumerated in the Parentage Act) and removal actions revolve around the same standard, *i.e.*, the best interests of the child, the provisions of the Parentage Act which require that custody and visitation be decided according to the Marriage Act also require that removal actions be decided pursuant to the Marriage Act. The Parentage Act, however, is silent as to removal actions and contains no provision instructing that the provisions of the Marriage Act are generally applicable to situations not specifically enumerated in the Parentage Act.

"It is a fundamental principal of statutory construction that the enumeration of certain things in a statute implies the exclusion of all others." (*In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 552.) The

Parentage Act specifically states that visitation and custody issues shall be decided pursuant to the guidelines set forth in the Marriage Act. (750 ILCS 5/101 *et seq.* (West 1994).) Because the Parentage Act contains no provisions requiring that actions for removal be resolved pursuant to section 609 of the Marriage Act, we find that section 609 of the Marriage Act is not implicitly incorporated into the Parentage Act.

Respondent argues that if section 609 does not apply to those children born out of wedlock, then such a conclusion would discriminate against illegitimate children by denying them substantial benefits accorded legitimate children. Respondent correctly notes that illegitimate children may not be discriminated against and once the State grants a right to legitimate children, there is no rationale for the same right being denied to illegitimate children. (See *People ex rel. Graham v. Adams* (1993), 239 Ill. App. 3d 643, 646.) However, in the case at bar, a holding that section 609 of the Marriage Act is inapplicable does not result in discrimination to an illegitimate child.

The purposes of section 609 of the Marriage Act are to ensure that removal of a child from the jurisdiction of the court is not done merely to frustrate the visitation rights of the noncustodial parent and to ensure that such a move is not detrimental to the well-being of the minor child. (See *Eckert*, 119 Ill. 2d at 323-29.) A section 609 hearing examines the motives of both parties to the removal action, whether the move is in the best interests of the child, and whether a reasonable visitation schedule can be worked out. See *Eckert*, 119 Ill. 2d at 326-27.

The Parentage Act contains a provision whereby a noncustodial parent can bring a petition to modify custody or visitation. (See 750 ILCS 45/16 (West 1994).) All actions to modify custody or visitation brought pursuant to the Parentage Act are governed by the standards contained in the Marriage Act. (750 ILCS 45/16 (West 1994).) In actions to modify visitation, a court is to apply the same provisions of the Marriage Act as are applicable to custody determinations. *In re Petition of Padin* (1989), 193 Ill. App. 3d 554, 557-58.

The Marriage Act provides that, in cases arising two years after the entry of an order setting custody, a party may petition the court for a modification of custody or visitation. (750 ILCS 5/610(a) (West 1994).) The moving party bears the burden of showing that there has been a change in the circumstances of the child or custodian and that modification would be in the best interests of the child. (750 ILCS 5/610 (West 1994).) In a case where the custodial parent is leaving the State with the minor child and the parties have never been married, such facts would be sufficient to demonstrate a change in

circumstances in satisfaction of the first prong of the statute. The court would then be required to proceed to examine the second prong of the statute.

We recognize that in *In re Marriage of Ballegeer* (1992), 236 Ill. App. 3d 941, 945, the court held that the removal of a minor child from the State would not be sufficient to satisfy the first prong of section 610. However, that case involved a petition brought by the custodial parent pursuant to section 609 as well as a petition for modification of custody brought by the noncustodial parent pursuant to section 610. The court noted that the only ground relied upon by the noncustodial parent in filing his petition to modify custody was that the custodial parent wished to move from the State with the minor child. (*Ballegeer*, 236 Ill. App. 3d at 945.) The court found that if the petition to remove was denied, the basis of the noncustodial parent's petition to modify custody would have been eliminated. If the petition was granted, then the court found that the noncustodial parent would have needed to demonstrate changed circumstances other than the custodial parent's desire to move out of the State in order to justify the modification. (*Ballegeer*, 236 Ill. App. 3d at 945.) The court's holding appears to have been made, in part, because the court had already made a determination that the move would be in the child's best interests. Thus, in that case, there would be no need to engage in a second best interests analysis utilizing the same facts the court had utilized in determining whether removal would be in the child's best interests.

However, in cases where the parties were never married, we hold that the custodial parent is not required to file a petition for removal. Thus, the court will not yet have engaged in a best interests of the child analysis to determine whether the custodial parent should be allowed to remove the minor child from the State. As such, the rationale for the court in *Ballegeer* would not be applicable in such a case. Therefore, where the parties were never married, the fact that a custodial parent wishes to move out of the State with the minor child is sufficient to show a change of circumstances which would satisfy the first prong of section 610 of the Marriage Act.

The court would then be required to engage in a best interests of the child analysis utilizing the factors enumerated in section 602 of the Marriage Act. (See 750 ILCS 5/602 (West 1994).) In making such a determination, the court must consider the motives of the parties and their willingness and ability to foster a close relationship between the child and both parents, as well as the effect of any change in custody or visitation on the child's overall quality of life. (750 ILCS 5/602 (West 1994).) These factors are much like the factors which a

court would consider in making a section 609 removal determination. Thus, the minor child would be afforded the same procedural rights as a legitimate child. The only difference would be the route traveled to access those rights.

For the foregoing reasons, the petitioner was not required to file a section 609 petition. Such a finding also does not result in discrimination against illegitimate children. Thus, we reverse the trial court's order declaring that section 609 of the Marriage Act applies to situations where the parties were never married.

Petitioner's prayer for relief did not request that, in the event that we found section 609 of the Marriage Act not applicable to the situation at bar, we reverse the order of the trial court which granted petitioner permission to move out of the State and modified the visitation schedule. Further, petitioner did not appeal the portion of the trial court's order which modified the visitation schedule. Thus, because we have already determined that the modified visitation schedule was realistic and reasonable under the circumstances, and because the previous visitation schedule would be unworkable in light of petitioner's move, we decline to reverse the trial court's visitation order.

Thus, for the foregoing reasons, the order of the circuit court of Kane County granting petitioner leave to remove the minor child from Illinois is affirmed. The order of the circuit court of Kane County declaring that section 609 of the Marriage Act applies where the parties were never married is reversed.

Affirmed in part; reversed in part.

COLWELL and RATHJE, JJ., concur.