ROCHELLE   HARBOUR,   Plaintiff-Appellee,   v.   ROGER   G.   MELTON, Defendant-Appellant.

Fourth District   No. 4—01—0936

Opinion filed August 23, 2002.

Roger G. Melton, of Cuba, Missouri, appellant *pro se.*

Byron J. Sims, of Phelps, Kasten, Ruyle, Burns & Sims, P.C., of Carlinville, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Roger G. Melton (Roger) appeals from an order of the circuit court of Macoupin County finding him in contempt for removing his minor child, Nicholas Gifford (born June 26, 1999), from Illinois without prior approval of the court or the child's mother,

plaintiff Rochelle Harbour (Rochelle). As a sanction, Roger was directed to pay Rochelle's attorney fees. Temporary custody of Nicholas was awarded to Rochelle until Roger filed a petition for leave to remove and approval was granted by the court or until Rochelle granted Roger written permission to remove the child from the state. The issues on appeal are whether (1) the trial court erred in applying section 609 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/609 (West 2000)) when the underlying proceeding was brought pursuant to the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 through 27 (West 2000)) and (2) the transfer of temporary custody was an improper sanction. We reverse.

The Illinois Department of Public Aid (Department) initiated the parentage action by filing a complaint on May 15, 2000. On the stipulation of Roger and Rochelle, on June 6, 2000, the trial court entered an order finding Roger to be the natural father of Nicholas and awarding Roger custody subject to "reasonable rights of visitation in" Rochelle. The Department was thereafter dismissed as a party.

On June 19, 2000, Rochelle filed a motion to vacate the order on the ground that she believed she had stipulated only to temporary custody until she returned from South Carolina. On the same date, she filed a petition for custody and a petition for rule to show cause. On July 20, 2000, Roger filed a motion to strike the pleadings because a motion to modify was the proper pleading under the Marriage Act. In addition, on July 31, 2000, Roger filed an alternative motion for temporary and permanent custody.

Following a hearing on August 10, 2000, the trial court entered an order on August 17, 2000, vacating the previous order of custody, denying the motion to vacate as to paternity, denying the motion to strike the pleadings, awarding Roger temporary custody, and specifically setting the visitation of Rochelle during the temporary custodial period. On June 4, 2001, the cause came before the trial court for hearing on the issues of custody and visitation, and the parties advised the trial court that they had reached an agreement. On June 7, 2001, the trial court entered an agreed order (1) granting Roger custody of Nicholas; (2) giving Rochelle visitation from 6 p.m. Friday through 6 p.m. Sunday on alternate weekends, as well as alternate holidays, with the parties directed to equally divide the Christmas holiday and with Rochelle also having visitation on the child's birthday and on the Wednesday of every week from 5 p.m. to 8 p.m.; (3) directing that the order was to be reviewed at the option of Rochelle in the event Roger became separated from his current wife; and (4) expressly reserving all other matters pertaining to the minor child.

On July 16, 2001, Rochelle filed a petition for a rule requiring

Roger to show cause why he should not be held in contempt of court because he changed his residence to 468 East Spencer, Cuba, Missouri, took the child with him, did not request leave of court or the consent of Rochelle, and thereby adversely affected Rochelle's right to visitation. At the hearing conducted August 13, 2001, Rochelle testified that, at the time the custodial order was entered, Roger lived in Litchfield with his wife and mother. Roger moved out of Illinois in late June or early July 2001. He now lived with the child, his wife, his mother, his grandmother, and a friend of his mother. Roger told her that he moved to Missouri because he and his wife were having problems. Rochelle went to Missouri and stayed with Roger for a month beginning June 29, 2001. She decided against staying in Missouri and getting back together with Roger, and she left Missouri about the end of July 2001. She denied giving Roger permission to take the child to Missouri. The petition for rule to show cause was filed about one week after she returned from Missouri.

Roger testified that he, the child, his mother, his grandmother, and his mother's friend, Eva, lived at the residence on East Spencer in Cuba, Missouri. He moved because he and his wife were having marital problems and he had a better job offer. Prior to the move to Missouri, he had separated from his wife. The job offer was as a mechanic for "Out-Of-The-Way Auto." He contacted Rochelle, and she offered to go to Missouri with him. Roger felt it might be good for the child to have both parents together. Rochelle stayed for about one month. Roger's wife moved into the home in Missouri about one week prior to the hearing. Roger had not filed a petition to dissolve his marriage or talked to an attorney about that. Rochelle told him she went to Missouri because she wanted to leave her home in Gillespie, Illinois, she did not like Illinois, and she was having problems at home. Rochelle told him that her mother used crack. When Rochelle left Missouri, she told him she was going to visit her mother for a couple of days. Her mother came to Missouri to pick her up.

Eva Moore testified that she lived in the same household with Roger. Rochelle told her that she wanted to get away from her family because her stepfather fondled her and she was sexually molested by her stepbrother, as was her younger brother.

Rochelle returned to testify that she lived with her mother, her stepfather, and her sister. She denied telling anyone that her stepfather fondled or molested her or that her mother did drugs. To her knowledge, her mother did not use drugs. Rochelle currently held two jobs. She worked part-time, about 20 hours per week, at Pizza Hut in Litchfield. She also had a full-time job working the midnight shift at Wal-Mart. She started working at Wal-Mart three to four days prior to

the hearing. She would begin working the day shift on the weekends at Pizza Hut during the week following the hearing. At Wal-Mart, she would work from 9 p.m. to 7 a.m., four days per week, alternating between weekdays for one month and weekends for one month. If she had custody of the child, during the day he would be in day care and during the night her sister or mother would baby-sit. Roger had never objected to her mother watching the child. Her mother and her sister also worked. Her sister's hours varied. Her mother's hours also varied, but generally she worked during the day and was home in the evening.

At the conclusion of the hearing, Rochelle's attorney argued that, based on "the statute," Roger was not permitted to remove the child from Illinois without the court's permission or Rochelle's permission. He did not argue that the court-ordered visitation had been disrupted by the removal of the child to Missouri.

On August 21, 2001, the trial court entered an order (1) finding Roger in contempt of court for removing the child from the state without permission of the court or Rochelle; (2) directing Roger to pay Rochelle's attorney fees; (3) granting temporary custody of Nicholas to Rochelle until such time as Roger filed a petition to remove that was approved by the court or until Rochelle granted Roger permission to remove the child from Illinois; and (4) further providing that when Rochelle could not directly supervise the child, she could place the child in the care and custody of her mother, Sharon Griffin, her sister Stephanie, or a licensed day-care provider. Although the order did not specifically set out Roger's rights to visitation, it stated "[n]othing in the paragraph shall be construed to prohibit reasonable and liberal visitation on the part of the respondent."

On September 4, 2001, Roger filed a motion for rehearing or to vacate the contempt order. On September 20, 2001, the trial court denied the motion. In denying the motion, the trial court explained that its primary concern was the best interests of the child. In deciding issues of custody and visitation, the court considered the child's contacts with Illinois and with family members in Illinois, and in determining whether to authorize removal, the fact that visitation could be the same as before removal was not controlling.

■ A trial court's finding a party in indirect civil contempt will not be overturned on appeal unless it is against the manifest weight of the evidence. *Busey Bank v. Salyards*, 304 Ill. App. 3d 214, 217, 711 N.E.2d 10, 14 (1999). However, to the extent this appeal raises an issue of statutory construction, that issue will be considered *de novo*. *In re Marriage of Kates*, 198 Ill. 2d 156, 163, 761 N.E.2d 153, 157 (2001).

■ Section 14(a)(1) of the Parentage Act, in relevant part, states, "In determining custody, joint custody, or visitation, the court shall

apply the relevant standards" of the Marriage Act. 750 ILCS 45/ 14(a)(1) (West 2000). It also expressly states that a judgment in an action under the Parentage Act may provide for the custody and guardianship of the child and visitation privileges with the child "which the court shall determine in accordance with the relevant factors" set forth in the Marriage Act and the applicable laws of Illinois to guide the court's determination of the child's best interests. 750 ILCS 45/14(a)(1) (West 2000).

■ Section 602(a) of the Marriage Act enumerates a set of nonexclusive factors that the trial court is to consider in determining custody in accordance with the best interests of the child. 750 ILCS 5/602(a) (West 2000). See *In re Marriage of Martins*, 269 Ill. App. 3d 380, 388-89, 645 N.E.2d 567, 573 (1995) (the statutory list of factors is not exclusive). The possibility of a custodial parent removing a child from the state would be a relevant factor to consider in determining custody. However, the original custodial order of the trial court, based on the agreement of the parties, granted custody of Nicholas to Roger without expressly providing for the possibility of removal and did not expressly require Roger to request permission from the court or from Rochelle to remove the child from Illinois. Had the court's order incorporated such a provision, the contempt powers of the court could be used to enforce that judgment. 750 ILCS 45/15(b) (West 2000).

■ Section 609(a) of the Marriage Act authorizes the court to grant leave to remove the child from Illinois on petition by the custodial parent, who has the burden of proving that removal is in the child's best interests. 750 ILCS 5/609(a) (West 2000). Although removal from the state relates to custody and visitation and section 609 is included in part VI of the Marriage Act relating to custody, reviewing courts that have considered the issue have consistently determined that section 609 is not incorporated by reference into the Parentage Act and does not apply to unmarried parents. *In re S.L.*, 327 Ill. App. 3d 1035, 1037, 765 N.E.2d 82, 84 (2002); *In re Adams*, 324 Ill. App. 3d 177, 180, 754 N.E.2d 425, 428 (2001); *In re Parentage of Melton*, 314 Ill. App. 3d 476, 481, 732 N.E.2d 11, 15 (2000); *In re Parentage of M.M.W.*, 296 Ill. App. 3d 877, 883, 695 N.E.2d 1357, 1361 (1998); *In re Parentage of R.M.F.*, 275 Ill. App. 3d 43, 51-52, 655 N.E.2d 1137, 1143-44 (1995). In *Adams*, the court concisely explained the rationale for this conclusion as follows:

> "Although the Parentage Act has adopted some of the provisions of the Marriage Act, it does not incorporate the entire Marriage Act and does not confer the same broad powers on the court. See *Melton*, 314 Ill. App. 3d at 478, 732 N.E.2d at 13. The court has no inherent powers in parentage cases, and the court's authority to

hear parentage cases is limited to the exercise of those powers that are expressly given to it by the statute. See *In re Marriage of Cohn*, 93 Ill. 2d 190, 443 N.E.2d 541 (1982)." *Adams*, 324 Ill. App. 3d at 180, 754 N.E.2d at 428.

The courts deciding each of these cases have recognized that the custodial parent does not have an absolute right to remove the child from Illinois. In *R.M.F.*, the court found that the modified visitation schedule was reasonable and upheld the court's authorization of the removal of the child even though section 609 did not require a petition to remove be filed. *R.M.F.*, 275 Ill. App. 3d at 52, 655 N.E.2d at 1144. In *M.M.W.*, the court recognized that a disruption of visitation caused by removal of the child could be a basis for a petition for modification of custody under section 16 of the Parentage Act (750 ILCS 45/16 (West 2000)), which incorporated the factors of section 610 of the Marriage Act (750 ILCS 5/610 (West 2000)), or a petition to enforce visitation under section 607.1 of the Marriage Act (750 ILCS 5/607.1 (West 2000)). *M.M.W.*, 296 Ill. App. 3d at 883-85, 695 N.E.2d at 1361-62 (although the court did not explain precisely how section 607.1 of the Marriage Act is incorporated into the Parentage Act). In *Melton*, the court required the custodial parent to seek modification of visitation prior to removing the child from the state. *Melton*, 314 Ill. App. 3d at 482, 732 N.E.2d at 16. *Adams* also required the custodial parent to seek to modify visitations if she could not comply with the court-ordered visitation after removal of the child from the state. *Adams*, 324 Ill. App. 3d at 180, 754 N.E.2d at 428. In *S.L.*, the court found that a decision to remove the minor from Illinois to Florida demonstrated a change in circumstances warranting the court to consider modifying custody. *S.L.*, 327 Ill. App. 3d at 1038-39, 765 N.E.2d at 85.

As noted, the analysis in *M.M.W.* suggests that a disruption of visitation by removal is an enforceable violation of the custodial order entered under the Parentage Act. *M.M.W.*, 296 Ill. App. 3d at 883-84, 695 N.E.2d at 1361. In the case at bar, although the petition for rule to show cause recited that visitation was adversely affected, no evidence of that was presented and no argument was made that removal of the child disrupted visitation in violation of the trial court's custody order. That argument has also not been made in this court. We deem Rochelle has abandoned that argument.

■ Therefore, the finding of contempt is against the manifest weight of the evidence because (1) the trial court's order awarding Roger custody did not require that he seek permission of the court or Rochelle before removing Nicholas from Illinois, (2) section 609 of the Marriage Act does not apply to this case, and (3) Rochelle has presented no evidence of a violation of the visitation provisions of the

trial court's order. Without evidence of a disruption of visitation, we cannot say that Roger's removal of the child without first seeking modification of the court's order constituted contempt of court.

■ Rochelle argues that she is disadvantaged because section 610(a) of the Marriage Act (750 ILCS 5/610(a) (West 2000)) requires that she wait two years to file a petition to modify custody. Her argument assumes that (1) the trial court did not retain jurisdiction of this question under the express reservation provision of the August 17, 2000, agreed custody order, (2) the trial court will consider the removal of a child to a distant location from one of his parents would not seriously endanger the child's mental or emotional health, and (3) section 610(a) is incorporated into the Parentage Act. Section 16 of the Parentage Act states that modification of custody or visitation "shall be in accordance with the relevant factors specified" in the Marriage Act. 750 ILCS 45/16 (West 2000). Applying the narrow statutory construction analysis previously utilized in these types of cases, the "factors" are set out in section 610(b) of the Marriage Act (750 ILCS 5/610(b) (West 2000)). Section 610(a), which contains a limitation or condition precedent for instituting a modification proceeding under the Marriage Act, may or may not apply to a modification proceeding under the Parentage Act. We do not decide that question.

Rochelle argues that the failure to recognize a requirement for permission to remove under the Parentage Act is discriminatory toward illegitimate children. This argument appears to be a challenge to the constitutionality of the statutory structure on the basis that it violates principles of equal protection under the law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. In *R.M.F.*, the court found that illegitimate children were not discriminated against because they are afforded the same procedural rights as legitimate children even though there was a different route traveled to access those rights. *R.M.F.*, 275 Ill. App. 3d at 51-52, 655 N.E.2d at 1144.

As stated heretofore, there was no determination (1) of whether the trial court's order contained an express reservation of the question of removal; (2) that removal endangered the child's mental or emotional health; (3) that section 610(a) was incorporated into the Parentage Act; and (4) of the application of section 16 of the Parentage Act and sections 610(a) and 610(b) of the Marriage Act to the case at bar. Moreover, the record and the documents before us do not disclose that Rochelle served timely notice on the Attorney General of an intent to raise an issue concerning the constitutionality of a statute as required by Supreme Court Rule 19 (134 Ill. 2d R. 19). See *Villareal v. Peebles*, 299 Ill. App. 3d 556, 561, 701 N.E.2d 145, 148 (1998); *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 545, 646 N.E.2d 23, 26 (1995).

132

Finally, Roger argues that a change of custody was not a proper sanction for a visitation violation. *M.M.W.*, 296 Ill. App. 3d at 883, 695 N.E.2d at 1361; *In re Marriage of Fox*, 191 Ill. App. 3d 514, 522, 548 N.E.2d 71, 76 (1989). Because we find that the trial court improperly found Roger in contempt, we decline to discuss the propriety of the sanction.

The judgment of the circuit court of Macoupin County is reversed.

Reversed.

KNECHT and APPLETON, JJ., concur.