*In re* MARRIAGE OF KATHLEEN INGRAM, Petitioner-Appellant, and STEVEN INGRAM, Respondent-Appellee.

Second District   No. 2—92—1328

Opinion filed March 24, 1994.

686

Robert E. Burke, of McHenry, for appellant.

Gregory L. Waggoner, of The Waggoner Law Firm, P.C., of Crystal Lake, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Petitioner, Kathleen Ingram, and respondent, Steven Ingram, were married in 1975 and divorced in 1988. In July 1992 Kathleen filed a petition for a rule to show cause alleging, among other things, that Steven had failed to make child support payments. The trial

court denied relief to Kathleen on the ground that the child support order was void and that Steven had been unemployed from the time that he ceased making the payments. On appeal, Kathleen argues that the trial court erred in holding that Steven was not in arrearage of his child support obligation, in refusing to hold Steven in contempt, and in failing to order Steven to pay attorney fees. She also claims that the trial court erred in refusing to order a new hearing on her petition for a rule to show cause after she presented new evidence that Steven had committed perjury.

On December 1, 1988, Kathleen and Steven entered into a "Marital Settlement Agreement" (Agreement) which the trial court approved on January 7, 1988. The Agreement provided, in part, that Kathleen would have custody of the couple's minor daughter and that Steven would have reasonable visitation rights. The Agreement also provided that Steven would pay $660 per month in child support. The Agreement further provided:

"The figure of $660.00 represents 20% of HUSBAND'S current net income of $3,300.00 per month. In the event that HUSBAND'S income shall increase, the child support payments shall increase to an amount equal to 20% of HUSBAND'S net income without further order of court. HUSBAND shall notify WIFE of any increase in income within 10 days of learning that an increase has or will be received. In the event that HUSBAND'S income [sic] shall decrease, and provided that HUSBAND has first delivered written documentation from his employer of such decrease to WIFE, the child support payments shall decrease to an amount equal to 20% of HUSBAND'S net income without further order of court."

On July 31, 1992, Kathleen petitioned for a rule to show cause claiming that Steven had failed to make child support payments. In a subsequent affidavit she claimed that he had not made a child support payment since October 17, 1991. In response, Steven claimed that he had been unemployed since October 27, 1991. The trial court approved a bystander's report which reflected that Steven's employment was terminated on October 28, 1991, that he had informed Kathleen on December 1, 1991, but that he had not provided Kathleen with any documentation that his employment was terminated.

The trial court held a hearing on Kathleen's petition on September 22, 1992. According to the bystander's report:

"A. Defendant testified he was laid off because of company-wide layoffs and reorganization. He had attempted to obtain documentation from his employer of the termination of his employment, but he was unable to obtain it. Since his termination he had not been employed where he obtained income.

B. The court found that the defendant's employment had been terminated by his employer, that the defendant had attempted to obtain written documentation from his employer of his termination, but had been unable to obtain it. The court held as a matter of equity it could not require the defendant to provide documentation of the termination of his employment when his employer refused to provide it. The court further found void that provision of the parties' marital settlement agreement obviating the need for a court order allowing a decrease in child support. The court ruled that it therefore could not find defendant in contempt or enter judgment for arrearages or attorney's fees."

The trial court entered an order on September 22, 1992, stating that Steven was not in arrearage of child support but ordering him to pay $41 per week for child support in the future. The trial court further entered an order stating that, in order for the parties to make any future modifications to the dissolution judgment, they must file a written motion and obtain an order of the court.

The bystander's report further reveals that Kathleen had subpoenaed the records of Steven's former employer on September 11, 1992, and that she had received a response on October 23, 1992. Nothing in the record reveals the substance of this response. Kathleen moved to reconsider the trial court's September 22, 1992, ruling refusing to hold Steven in arrearage of child support. This motion was file-stamped on September 14, 1992, but was actually filed between October 13 and October 21, 1992. On October 27, 1992, Kathleen filed a motion for a new trial alleging that the records provided by Steven's former employer revealed that Steven was fired for cause, on account of poor job performance and absenteeism, and that his termination was therefore tantamount to a voluntary termination. Kathleen also claimed that Steven had perjured himself at the September 22, 1992, hearing by stating that his termination was the result of a company-wide layoff.

The trial court denied both motions on October 27, 1992. On appeal, Kathleen claims that the trial court erred in finding the Agreement void and refusing to enforce Steven's child support obligations. Kathleen concedes that the Agreement improperly provided that the child support award could be modified without the approval of the court. She argues, however, that the trial court should have severed the provision allowing for automatic modifications and enforced the remainder of the Agreement, including the provision which required Steven to pay $660 per month for child support. She also argues that the trial court erred in refusing to grant her a new hearing on her petition for a rule to show cause based on newly

discovered evidence that Steven was fired for cause and not laid off. She argues that Steven's termination for cause was comparable to a voluntary termination and should not have been grounds for a reduction in his child support obligations. She further contends that the discovery of perjury is, in and of itself, grounds for a new trial.

■ An analysis of the issues presented in this appeal must begin with a discussion of the validity of the Agreement. Section 502(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) encourages parties to a dissolution proceeding to settle their disputes amicably. (750 ILCS 5/502(a) (West 1992).) A settlement agreement which is incorporated into a dissolution judgment is tantamount to an order of the court. (*In re Marriage of Stadheim* (1988), 170 Ill. App. 3d 19, 22-23.) The portions of a settlement agreement which relate to the division of property and spousal maintenance are binding on the trial court. (750 ILCS 5/502(b) (West 1992).) However, the portions of a settlement agreement which relate to the support, custody, and visitation of children are not binding upon the trial court. (750 ILCS 5/502(b) (West 1992); see also *In re Marriage of Yndestad* (1992), 232 Ill. App. 3d 1, 7.) The modification of a child support obligation is a judicial function, and the court is obligated in a dissolution proceeding to protect the interests of the children involved. (*Blisset v. Blisset* (1988), 123 Ill. 2d 161, 167.) Parties to a dissolution proceeding are not at liberty to make agreements which affect the interests of their children without obtaining the approval of the court. *Blisset*, 123 Ill. 2d at 167-68; *In re Marriage of Grabarek* (1988), 175 Ill. App. 3d 1045, 1048-49; *Huckaby v. Huckaby* (1979), 75 Ill. App. 3d 195, 199.

■ Under section 505(a)(5) of the Act, an order of dissolution must express child support obligations in dollar amounts. (750 ILCS 5/505(a)(5) (West 1992).) Therefore, an order cannot set a child support obligation at a percentage of a parties' income; rather, the order must specify a dollar figure. (*In re Marriage of Macino* (1992), 236 Ill. App. 3d 886, 888; *In re Marriage of Ferguson* (1990), 207 Ill. App. 3d 649, 651.) Section 505(a)(5) accords with the rule that the trial court must approve any modification to a child support obligation in order to protect the interests of the children. (See *Blisset*, 123 Ill. 2d at 167-68; *In re Marriage of Michael* (1992), 226 Ill. App. 3d 1088, 1090.) If the change in a parent's income is sufficiently substantial to merit a change in that parent's child support obligations, the court should have the opportunity to evaluate the parties' circumstances in light of the best interests of the children before the change in child support takes effect. See *McManus v. McManus* (1976), 38 Ill. App. 3d 645, 647; 1 H. Gitlin, Gitlin on Divorce § 10.02(H), at 205—6 (1993).

The Agreement in this case required Steven to pay $660 per month in child support, and it stated that $660 constituted 20% of Steven's monthly income. The Agreement in part also provided that, in the event Steven's income were to increase or decrease, his child support payments would also automatically increase or decrease to 20% of his income. The Agreement therefore incorrectly set Steven's child support obligation at a percentage of his income and obviated the need for the court to approve changes in the amount of his child support payments.

■ The question remains, however, what effect this flaw in the Agreement had on Steven's obligations. Unless a court order is void, it is enforceable and it must be obeyed until it is set aside, even if it is erroneous. (*Macino*, 236 Ill. App. 3d at 888; *In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 62-63.) On the other hand, a void order is unenforceable and creates no legal obligation. (*Macino*, 236 Ill. App. 3d at 888.) "A void judgment is one which is entered by the court without jurisdiction of the parties or the subject matter or without legal authority in the court to decide the particular matters presented." *Macino*, 236 Ill. App. 3d at 888; see also *In re Adoption of Schumacher* (1983), 120 Ill. App. 3d 50, 54.

In *Macino*, we recently determined that a dissolution order which set the husband's child support obligation at a percentage of the husband's income was not void, even though it violated section 505(a)(5). (*Macino*, 236 Ill. App. 3d at 889.) However, in *Macino*, we recognized that the dissolution order in that case was entered in 1975, before section 505(a)(5)'s requirement that support awards be expressed in dollar amounts was enacted. We determined that, at the time the trial court entered the order, it had the authority to set a child support obligation at a percentage of income rather than a dollar amount. (*Macino*, 236 Ill. App. 3d at 889.) We reasoned that no authority "suggest[ed] that prior to the amendment of section 505 [in 1985] the circuit courts were exceeding their authority when they entered percentage awards." *Macino*, 236 Ill. App. 3d at 889.

■ In this case, on the other hand, the Agreement was entered into after the enactment of section 505(a)(5) and was therefore improper from the outset. We agree with the trial court that the portion of the Agreement which set Steven's support obligations at a percentage of his income was void and unenforceable. We believe that section 505(a)(5) cut off the authority of the trial court to enter a percentage-based child support order which allows the parties to modify their support obligations without the approval of the trial court. See 1 H. Gitlin, Gitlin on Divorce § 10.02(H), at 205—7 n.113.01 (1993).

The trial court also seemed to have found, correctly, that the portion of the Agreement which set Steven's obligations at a percentage of his income was severable from the provision which set his obligation at $660 per month. In *In re Marriage of Fahy* (1991), 208 Ill. App. 3d 677, the court considered an appeal from a child support order which provided that the husband pay $700 per month or 45% of his income, whichever was greater. (*Fahy*, 208 Ill. App. 3d at 696.) The court upheld the order to the extent that it set child support at $700 per month and severed the portion of the order setting it at 45% of the father's income. (*Fahy*, 208 Ill. App. 3d at 696-97.) The court pointed out that "[i]t is well established that where parts of a decree are clearly separable, only that part which is in excess of the court's authority is void and the remainder is valid." (*Fahy*, 208 Ill. App. 3d at 697.) As in *Fahy*, the portion of the Agreement in the case at bar which provided for percentage-based child support payments was clearly separable from the portion which provided for payments in the amount of $660 per month. There is no dispute that Steven was obligated to pay $660 per month pursuant to the Agreement while his income was stable.

■ We disagree, however, with the trial court's decision to excuse Steven from the child support payments which accrued after Steven lost his job. The valid, enforceable portion of the Agreement required Steven to pay $660 per month in child support. This obligation continued until Steven petitioned for and was granted a modification. (See 750 ILCS 5/510(a) (West 1992); *In re Marriage of Jackson* (1989), 179 Ill. App. 3d 479, 483.) Furthermore, past-due child support payments which accrue prior to the filing of a petition for modification constitute a vested and unmodifiable right. (*Macino*, 236 Ill. App. 3d at 890; *In re Marriage of Frazier* (1990), 205 Ill. App. 3d 621, 624; 750 ILCS 5/510(a) (West 1992).) A trial court almost never has the authority to modify a child support obligation retroactively. (*In re Marriage of Hardy* (1989), 191 Ill. App. 3d 685, 690.) Therefore, Kathleen is entitled to recover the $660 per month in child support that accrued between when Steven stopped making payments and September 22, 1992, when the trial court modified Steven's child support obligations to $41 per month.

We recognize that this decision may pose a hardship on Steven. Steven's failure to petition for a modification of the child support judgment when he first lost his job was probably due to his reliance on the Agreement. Nonetheless, the law is clear that a party cannot stop or reduce his child support payments unless the trial court has approved the modification. To extinguish Steven's obligation to make past-due child support payments would impair the child's interests.

(See *Blisset*, 123 Ill. 2d at 170.) Therefore, this is not a case where equitable estoppel operates to excuse Steven's obligations. See *In re Marriage of Duerr* (1993), 250 Ill. App. 3d 232, 236-37; *Johnston v. Johnston* (1990), 196 Ill. App. 3d 101, 105-06.

■ Kathleen also claims that the trial court erred in refusing to hold Steven in contempt for his failure to make child support payments and for refusing to award her attorney fees. However, Kathleen has provided no argument or authority in support of these claims. We therefore consider them waived. 134 Ill. 2d R. 341(e)(7); *Hutchings v. Bauer* (1991), 212 Ill. App. 3d 172, 183, *rev'd on other grounds* (1992), 149 Ill. 2d 568.

■ Kathleen next claims that she is entitled to a new hearing on her petition for a rule to show cause because the trial court's September 22, 1992, findings were tainted by Steven's perjury. She claims that she obtained documentation from Steven's employer which proves that Steven was fired for poor work performance and therefore that he lied when he testified that he had been laid off. However, Kathleen has not included this documentation in the record. All doubts that arise from the incompleteness in the record must be resolved in favor of the trial court's decision. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 392; *Faustrum v. Board of Fire & Police Commissioners* (1993), 240 Ill. App. 3d 947, 950.) Because nothing in the record established that Steven committed perjury, we must affirm the trial court's refusal to grant a new hearing to Kathleen.

The judgment of the circuit court of McHenry County is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part; reversed in part and remanded.

DOYLE and QUETSCH, JJ., concur.