SECOND DIVISION

July 11, 2000

No. 1-99-2463

IN RE Parentage of Bremen Hall Melton )  Appeal from the

)  Circuit Court of

(Lynn M. Hall, )  Cook County

)

Petitioner-Appellant, )

)

v. )

)

Brace L. Melton, )  Honorable

)  Melvin J. Cole,

Respondent-Appellee). )  Judge Presiding

MODIFIED ON DENIAL OF REHEARING

JUSTICE McNULTY delivered the opinion of the court:

The Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 
et seq.
 (West 1996)) expressly refers to the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 
et seq.
 (West 1996)).  We must decide whether by such reference the Parentage Act conferred on the court all the powers conferred by the Marriage Act.  We hold that it did not.  In particular, in proceedings under the Parentage Act the court lacks the power to enjoin a party from removing the child from the state.

Lynn Hall gave birth to a son, Bremen Melton, on May 13, 1997.  On April 22, 1998, she filed a petition to establish parentage, naming Brace Melton as Bremen's father.  She sought permanent custody and child support.  The trial court entered an agreed order on April 12, 1999, temporarily awarding Hall child support and custody, and granting Brace supervised visitations at the home of Hall's father, in Oak Park, Illinois, every Tuesday and Thursday.  Although the court titled it a temporary order, it does not provide for the termination of any of its provisions.

Hall then petitioned for leave to remove Bremen from Illinois to reside with her in Vermont.  On April 27, 1999, the court entered an order enjoining her from removing the child from Illinois, and changing the visitation to Mondays and Wednesdays.  Hall moved to vacate the injunction, arguing that the court lacked authority to enter it.  After a hearing at which the parties presented some evidence, the court denied the motion to vacate and continued the matter for mediation.  The court expressly held that section 501.1 of the Marriage Act (750 ILCS 5/501.1 (West 1996)) applied to the parentage proceedings and authorized the injunction.  Hall appeals.

Because the trial court refused to dissolve an injunction, we have jurisdiction over the appeal pursuant to Supreme Court Rule 307(a)(1).  166 Ill. 2d R. 307(a)(1).

Section 14 of the Parentage Act provides that in parentage proceedings:

"The judgment shall contain or explicitly reserve provisions concerning any duty and amount of child support and may contain provisions concerning the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, which the court shall determine in accordance with the relevant factors set forth in the Illinois Marriage and Dissolution of Marriage Act and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child.  In determining custody, joint custody, or visitation, the court shall apply the relevant standards of the Illinois Marriage and Dissolution of Marriage Act.  Specifically, in determining the amount of any child support award, the court shall use the guidelines and standards set forth in *** the Illinois Marriage and Dissolution of Marriage Act ***."  750 ILCS 45/14(a)(1) (West 1996).

The court may use its contempt powers to punish any failure to comply with its orders just as the court could in proceedings under the Marriage Act.  750 ILCS 45/15(b) (West 1996).  And according to section 16:

"The court has continuing jurisdiction to modify an order for support, custody or visitation included in a judgment entered under this Act.  Any custody or visitation judgment modification shall be in accordance with the relevant factors specified in the *** Marriage Act."  750 ILCS 45/16 (West 1996).

The Parentage Act does not incorporate the entire Marriage Act.  
In re Parentage of R.M.F.
, 275 
Ill. App. 3d
 43, 50, 655 N.E.2d 1137 (1995).  Section 14 expressly adopts "the relevant factors set forth in the *** Marriage Act" (750 ILCS 45/14(a)(1) West 1996)) for judgments, especially "the guidelines and standards" set forth in the Marriage Act for determining child support.  The Parentage Act also expressly directs the court hearing a petition regarding parentage to "apply the relevant standards" of the Marriage Act for determining custody, joint custody, and visitation.  Section 16 of the Parentage Act expressly adopts "the relevant factors" of the Marriage Act for modifying any order for support, custody or visitation.

While the Parentage Act adopts some of the factors, guidelines and standards stated in the Marriage Act, the Parentage Act does not incorporate the procedures of the Marriage Act and it does not broadly confer on the court the same powers conferred on the court in actions under the Marriage Act.  Section 15(b) of the Parentage Act incorporates the contempt powers provided by the Marriage Act, but otherwise the Parentage Act confers all applicable powers directly on the court, without reference to the Marriage Act.  In particular, the Parentage Act nowhere confers on the court the power to enjoin parents from removing the child from the state, or any of the other powers conferred by section 501 or 501.1 of the Marriage Act.

Like divorce under the Marriage Act, proceedings under the Parentage Act are "entirely statutory in origin and *** the court's authority is limited thereby."  
In re Marriage of Cohn
, 93 Ill. 2d 190, 206, 443 N.E.2d 541 (1982); 
Ehorn v. Podraza
, 51 
Ill. App. 3d
 816, 817, 367 N.E.2d 300 (1977).  The court has no inherent powers in parentage cases or divorce actions.  
In re Marriage of Milliken
, 199 
Ill. App. 3d
 813, 817, 557 N.E.2d 591 (1990).  Because the Parentage Act does not give the court the power to enjoin a party from removing the child from the jurisdiction, the trial court lacked authority to enter the injunction.  That part of the court's order is vacated.

To avoid possible confusion, we will clarify the import of our holding.  Vacation of the injunction will have little practical effect in this case.  The trial court entered an agreed order awarding Brace visitation with Bremen.  Section 14 of the Parentage Act expressly confers on the court power to grant the noncustodial parent visitation.  The orders for visitation remain in effect until the trial court issues an order denying visitation for Brace or altering the place for that visitation.  See 
In re Marriage of Ingram
, 259 
Ill. App. 3d
 685, 690, 631 N.E.2d 386 (1994).

The court also has the power to impose contempt sanctions, under section 15(b), for any failure to comply with its orders.  Hall does not contend she could fully comply with ordered visitations in Illinois every Monday and Wednesday if she moves to Vermont with Bremen.  Therefore, the court must modify visitation before Hall moves to Vermont or she will disobey the order and thereby commit contempt of court.  See 
In re Marriage of Macino
, 236 
Ill. App. 3d
 886, 888-89, 603 N.E.2d 105 (1992).

Section 16 of the Parentage Act permits the court to modify any order for visitation in accord with the relevant factors listed in the Marriage Act.  The Marriage Act specifies the factors relevant to awarding visitation to a noncustodial parent in section 607(a), and it specifies the factors for modification of visitation in section 607(c).  750 ILCS 5/607(a), (c) (West 1996).  In 
Department of Public Aid ex rel. Gagnon-Dix v. Gagnon
, 288 
Ill. App. 3d
 424, 680 N.E.2d 509 (1997), the appellate court held that the Parentage Act did not incorporate section 607 of the Marriage Act.  The court said:

"The reference in section 14(a)(1) of the Parentage Act to the factors set forth in the Marriage Act to determine the best interest of the child is a reference to section 602 of the Marriage Act 
[citation]
, not to section 607 of the Marriage Act 
[citation]
.  The section 14(a)(1) reference to 'relevant standards' makes it clear that not every rule a court would apply to a parent in a dissolution of marriage case applies with equal force to a parent in a parentage case. 
[Citation]
.  There is no presumption that it is in the best interest of a child to have visitation with a biological father who has had nothing to do with the child for eight years.  In fact, the parental rights of an unmarried father may be terminated where he does not seek to establish paternity or pay birth expenses or provide support.  
[Citation.]
  It would be inconsistent to legislatively mandate visitation for a biological father whose parental rights could be terminated if a petition seeking that relief were filed.

We hold the burden of proof in these cases is on the noncustodial parent seeking visitation."  (Emphasis omitted.)  
Gagnon
, 288 
Ill. App. 3d
 at 428.

The court cited no statutory authority for the shift in the burden of proof.  We cannot accept the court's strained construction of the phrase "relevant standards."  The Marriage Act sets out the factors for custody determinations in section 602 (750 ILCS 5/602 (West 1996)), and those factors guide custody determinations under the Parentage Act because they are the "relevant standards" for determining custody.  750 ILCS 45/14(a) (West 1996).  The Marriage Act sets out the factors for joint custody determinations in section 602.1(c) (750 ILCS 5/602.1(c) (West 1996)), and those factors guide joint custody determinations under the Parentage Act because they are the "relevant standards" for determining joint custody.  750 ILCS 45/14(a) (West 1996).  The standards stated in section 602.1 incorporate by express reference the standards announced in section 602.  The Marriage Act sets out the factors for determining visitation privileges in section 607(a) (750 ILCS 5/607(a) (West 1996)), and those factors guide visitation determinations under the Parentage Act because they are the "relevant standards" for determining visitation privileges.  750 ILCS 45/14(a) (West 1996).

We see no inconsistency between the provisions for terminating the parental rights of unmarried fathers and the statutory presumption in favor of visitation.  When a court determines that a parent is an unfit person and termination of parental rights would serve the best interests of the child, the court should terminate those rights.  See 
In re Adoption of D.A.
, 222 
Ill. App. 3d
 73, 75, 583 N.E.2d 612 (1991).  The parent then would no longer have the benefit of the presumption favoring visitation under the Marriage Act and the Parentage Act, because the right to visitation is one of the legal rights terminated.  750 ILCS 50/17 (West 1996).  Until the court sees evidence of grounds to terminate parental rights, the presumption in favor of visitation applies.

The court in 
Gagnon
 stated policy grounds for not incorporating the Marriage Act's standards for visitation into the Parentage Act.  But the arguments concerning what the legislature should have done cannot change the express language of the statute incorporating "the relevant standards" of the Marriage Act for determining visitation and "the relevant factors" of the Marriage Act for modifying visitation.  In light of the arguments presented in 
Gagnon
 the legislature might prefer to change the Parentage Act.  But we must enforce the laws enacted by the legislature, not the laws the legislature ought to have enacted.  See 
Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund
, 95 Ill. 2d 211, 220, 447 N.E.2d 394 (1983).

"[R]egardless of the court's opinion regarding the desirability of the results surrounding the operation of the statute, the court must construe the statute as it is and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute."  
Toys "R" Us, Inc. v. Adelman
, 215 Ill. App. 3d 561, 568, 574 N.E.2d 1328 (1991).

The language of the Parentage Act constrains us to hold that it incorporates the factors specified in section 607(c) of the Marriage Act for modification of visitation.  That is, the court may modify visitation whenever the modification would serve the child's best interests, but the court should not restrict the noncustodial parent's visitation "unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health."  750 ILCS 5/607(c) (West 1996).  The reference in section 607(c) to the child's best interests incorporates the factors stated in section 602 for determining those interests.  Therefore, the court considering a petition to modify visitation under either the Parentage Act or the Marriage Act must look to the factors applicable to custody determinations.  See 
R.M.F.
, 275 
Ill. App. 3d
 at 50.  Like the court in 
R.M.F.
, we find that the distinctions between the Parentage Act proceedings and Marriage Act proceedings have no adverse effect on the rights of children born out of wedlock.  
R.M.F.
, 275 
Ill. App. 3d
 at 51-52.

Although the Marriage Act uses exceptionally strong language limiting the power of the court on a petition to restrict visitation, courts under the Marriage Act have the power to permit the custodial parent to move with the child away from Illinois.  750 ILCS 5/609 (West 1996).  The Parentage Act does not incorporate section 609 of the Marriage Act.  
R.M.F.
, 275 
Ill. App. 3d
 at 50.  However, cases decided under section 609 provide guidance for determining when the child's interests may warrant moving him out of state, even though the move will adversely affect the noncustodial parent's visitation.  See 
Tysl v. Levine
, 278 
Ill. App. 3d
 431, 437, 662 N.E.2d 915 (1996).

We vacate the injunction preventing either parent from removing Bremen from Illinois, because the Parentage Act does not confer on the court the power to impose such an injunction.  The temporary order for custody, support and visitation remains in effect pending final determination of the parties' rights under the parentage petition.  Section 16 of the Parentage Act permits Hall to petition for modification of visitation either before or after the final disposition of the parentage petition, and she could seek a modification that would permit her to leave the state.  If she files such a petition the court should apply the factors, stated in section 607(c) of the Marriage Act, relevant to petitions to modify visitation; the reference therein to the best interests of the child incorporates the factors of section 602.  See 
In re Petition of Padin
, 193 
Ill. App. 3d
 554, 558, 550 N.E.2d 276 (1989).  The court may also look for guidance to cases in which courts applying the Marriage Act have allowed a party to move out of state with the child, despite the reduction in the noncustodial parent's visitation.

On petition for rehearing Hall asserts that subsequent orders regarding visitation have superseded the orders discussed in the opinion.  If, after moving to Vermont, Hall will be able to comply fully with the court's visitation orders currently in effect, she need not petition to modify visitation before moving out of state.

Vacated and remanded.

COUSINS, P.J., and McBRIDE, J., concur.