No.  3--02--0043

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

STACIE DEBILIO, )  Appeal from the Circuit Court

)  of the 14th Judicial Circuit,

Petitioner-Appellee, )  Rock Island County, Illinois,

)

v. )  No. 00--F--135

)

JEFFREY RODGERS, )  Honorable

)  Lori R. Lefstein,

Respondent-Appellant. )  Judge, Presiding.

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

Petitioner Stacie DeBilio filed a petition to modify a visitation order to allow her to move to Florida with her child, Brianna.  The trial court granted the petition, and respondent Jeffrey Rodgers, Brianna's father, appeals.  We reverse and remand.

Facts

Brianna was born December 1, 1998.  Respondent was present at the hospital and he executed an affidavit of paternity.  He also listed Brianna as a dependent on his health insurance policy.  Following the child's birth, the parties lived together until the fall of 1999.  During that time, both petitioner and respondent provided care to Brianna.  After petitioner moved out of respondent's residence, respondent voluntarily paid child support in the amount of $30 to $50 per week.  Respondent also had regular visitation with Brianna during this period.  On May 31, 2000, petitioner filed a petition to establish paternity, seeking a determination that respondent was Brianna's father and also requesting custody and child support.  Respondent admitted paternity and on December 13, 2000, an agreed order for custody, support and visitation was entered.  That order granted joint custody of Brianna to petitioner and respondent, with petitioner as the residential custodian.  Respondent was granted liberal visitation rights, including every other weekend, every Tuesday evening and various holidays.  On February 21, 2001, petitioner filed a petition to modify, requesting the court to authorize her to move with Brianna to Florida, and to establish a new visitation schedule between respondent and Brianna.

Both petitioner and respondent testified at the subsequent hearing, along with several other witnesses.  Given our disposition of this case, we need not give a detailed recitation of that testimony.  However, in general, the evidence established that petitioner was unemployed, lived in subsidized housing and received public aid.  Her most recent job was as a waitress.  Petitioner was unable to secure employment or go to school because respondent had failed to fix her car, despite agreeing to do so in the December 13 order.  Petitioner acknowledged, however, that while she lived within walking distance of at least 100 businesses, she had only applied to two for employment.  In addition, a nearby bus route could take her to Blackhawk College, which she had previously attended.

Petitioner had no family in Illinois; her parents and her sister lived in Florida.  Petitioner planned to move into her parents' home in Pembroke Pines, Florida.  Petitioner had been offered a job as a waitress and she planned to go to school at a nearby community college.  She would have access to her parents' vehicles, and her sister, a stay-at-home mother of three, would babysit with Brianna while petitioner was at school or work.

Respondent testified that he was current in his child support payments and regularly exercised his visitation privileges with Brianna.  In addition, the child often spent time with her 9-year old cousin and with respondent's parents, who lived one block from respondent.  Indeed, the trial court found that Brianna "has a very close, loving relationship with her father and the paternal grandparents."  Nevertheless, the court ruled that it was in the child's best interests to modify visitation as requested by petitioner.  It is evident from the court's comments in announcing its judgment, as well as from the language of the judgment itself, that the ruling was based on the court's belief that a refusal to modify visitation would be equivalent to enjoining petitioner from leaving Illinois.

Analysis

In 
In re Parentage of Melton
, 314 Ill. App. 3d 476, 732 N.E.2d 11 (2000), the court held that the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 
et
 
seq
. (West 2000)) does not empower a court to enjoin a parent from removing her child from the state.  Subsequently in 
In re Adams
, 324 Ill. App. 3d 177, 754 N.E.2d 425 (2001), this court applied 
Melton
 to a case involving joint custody, ruling that the trial court lacked the authority to enjoin a mother from removing her child from Illinois.  The trial court interpreted 
Melton
 and 
Adams
 as 
requiring
 a modification of visitation.  The court stated:

"Now, if I were to find that a modification of the current visitation schedule is not in Brianna's best interest, then Ms. Debilio could not leave the state because she could not comply with the current schedule, so I would be enjoining Ms. Debilio from leaving the state, which Melton and Adams say that I can't do."

Contrary to the court's understanding, neither 
Melton
 nor 
Adams
 held that a court was required to grant a petition to modify visitation simply because one parent desired to move out of state.  In 
Melton
 the court noted that vacating the injunction preventing removal would have "little practical effect" (
Melton
, 314 Ill. App. 3d at 479, 732 N.E.2d at 14) because petitioner would not be able to comply with the visitation order if she left the state.  The court remanded the case so that petitioner "could seek a modification that would permit her to leave the state."  
Melton
, 314 Ill. App. 3d at 482, 732 N.E.2d at 16.  The court explained:

"If she files such a petition the court should apply the factors, stated in section 607(c) of the Marriage Act, relevant to petitions to modify visitation; the reference therein to the best interests of the child incorporates the factors of section 602.  [Citation.]  The court may also look for guidance to cases in which courts applying the Marriage Act have allowed a party to move out of state with the child, despite the reduction in the noncustodial parent's visitation."  
Melton
, 314 Ill. App. 3d at 482, 732 N.E.2d at 16.

Similarly in 
Adams
, this court stated that "we take issue with the trial court's suggestion that [petitioner] had 'an absolute right to relocate' with [the child] because she, like the mother in 
Melton
 had to 
first
 seek permission to modify the visitation schedule if she could not comply with it after the move."  (Emphasis added.)  
Adams
, 324 Ill. App. 3d at 180, 754 N.E.2d at 428.

In other words, while a court may not enjoin a parent from leaving the state with her child, if doing so would result in a violation of the visitation order, the parent must seek modification or risk contempt proceedings.  See 
In re Parentage of Melton
, 321 Ill. App. 3d 823, 748 N.E.2d 291 (2001) (
Melton
 II) (affirming contempt finding based on violation of visitation order).  Section 16 of the Parentage Act provides that any modification of a visitation order "shall be in accordance with the relevant factors specified in the 'Illinois Marriage and Dissolution of Marriage Act' [Marriage Act] [750 ILCS 5/101 
et
 
seq
. (West 2000)]."  Under section 607(c) of the Marriage Act, a court may modify a visitation order when doing so "would serve the best interest of the child."  750 ILCS 5/607(c) (West 2000).  The factors to be considered in making a best interests determination are set forth in section 602.  750 ILCS 5/602 (West 2000).  In addition, although the Parentage Act does not incorporate section 609 of the Marriage Act (750 ILCS 5/609 (West 2000)), which authorizes a court to grant leave to remove a child from the state, "cases decided under section 609 provide guidance for determining when the child's interests may warrant moving him out of state, even though the move will adversely affect the noncustodial parent's visitation."  (
Melton
, 314 Ill. App. 3d at 481, 732 N.E.2d at 15-16).  See, 
e.g.
, 
Tysl v. Levine
, 278 Ill. App. 3d 431, 662 N.E.2d 915 (1996).

We recognize that the trial court in this case made a finding that a modification of visitation was in Brianna's interests.  However, it did so 
because
 petitioner and the child were moving to Florida.  The court acknowledged that it did "not address the issue of whether the move to Florida is in Brianna's best interest."  That is, however, precisely the issue that should have been addressed.

The only remaining issue concerns the relief to be granted in this case.  We have before us the record of the hearing in the trial court, and the parties have fully briefed and argued the question of whether allowing petitioner to move would be in Brianna's best interests.  We are tempted, in the interest of judicial economy and with a view towards minimizing expense to the parties, to rule on that issue.  This court, however, functions as a court of review, not a finder of fact.  A best interest determination is heavily fact dependent; it "cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case" (
In re Marriage of Eckert
, 119 Ill. 2d 316, 326, 518 N.E.2d 1041, 1045 (1988)).  On review, a trial court's determination of what is in a child's best interests will not be reversed unless it is clearly against the manifest weight of the evidence and it has resulted in manifest injustice.  
In re Marriage of Smith
, 172 Ill. 2d 312, 665 N.E.2d 1209 (1996).  There is a strong and compelling presumption in favor of a trial court's ruling because it "had significant opportunity to observe the parents and the children, thereby evaluating their temperaments, personalities, and capabilities."  
Smith
, 172 Ill. 2d at 321, 665 N.E.2d at 1213.  This court has had no such opportunity.  Therefore, we find that it is necessary to remand this cause for further proceedings consistent with this order.

For the reasons stated above, the judgment of the circuit court is reversed and remanded.

Reversed and remanded.

BRESLIN and McDADE, J.J., concur.