CHARLES JINES, Plaintiff-Appellee, v. ANNA JURICH, Defendant-Appellant.

Fifth District   No. 5—01—0433

Opinion filed December 23, 2002.

John D. Drew and Bryan A. Drew, both of Drew & Drew, P.C., of Benton, for appellant.

No brief filed for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Charles Jines (plaintiff) sought visitation with minor children he had fathered with Anna Jurich (defendant). After a hearing, the circuit court of Franklin County entered an order awarding visitation to plaintiff. On appeal, defendant raises the following issues: (1) whether the trial court erred in placing a burden on defendant to prove that no visitation should be awarded and (2) whether the trial court's decision was against the manifest weight of the evidence. We affirm.

## FACTS

On September 29, 1999, plaintiff filed a petition in the circuit court of Jackson County, Illinois, to establish parentage and visitation. Subsequent to a motion to transfer venue, the case was transferred to the circuit court of Franklin County. At a hearing on December 16, 1999, the court determined that plaintiff was the father of the children, based on the parties' compliance with the Vital Records Act (410 ILCS 535/12 (West 1998)). The court then entered a temporary order awarding defendant custody and plaintiff visitation rights. On January 18, 2001, plaintiff filed a petition to establish a parent-child relationship and a petition for visitation. A hearing was held on May 9, 2001.

At the beginning of the hearing, the trial judge informed the parties of the burdens he was placing on them. Regarding visitation, the court stated:

"We are going to go into this with the thought in mind that visitation will be ordered, okay. It's going to be up to your client to show me, as she would have to under [s]ection 607—I think that's the section of the divorce act, which applies here—that there is a serious endangerment to the child's mental, emotional, moral[,] or physical health that would require me to restrict [plaintiff's] visitation. In other words, going into this, he is going to get visitation, okay."

At the conclusion of the hearing, the court commented on the evidence regarding visitation:

"The burden of proof was on her to show a serious endangerment to these children's moral, emotional, [and] physical health.

She has fallen more than woefully short of the mark; she hasn't even made out a case.

I have got a picture of the front of your house, which I guess I am supposed to conclude from that it's not a very attractive house, I don't know. Maybe there is some clutter in there, I don't know. They have been dancing around the edge of the pen about marijuana. There has been no evidence other than this photograph. And, incidentally, since I was in [*sic*] the only one in this room besides the [c]ourt [r]eporter and these two people—the lawyers weren't there at the last hearing—the marijuana wasn't just put in because of [plaintiff]; it was put in because of [defendant].

I made the finding, based on the evidence, that there had been marijuana usage by both parties, okay. If you will read the order, it doesn't say '[defendant].' It says no marijuana is to be used in front of the children. Now, I know one of them denied it, and the other denied it, but I am telling you I heard the evidence in the case. All right.

So, moving back here, I have got photographs of sores on feet. I have got testimony about a sore eye. I have got a little bit here, and a little bit there. What I don't have is[—]I don't have any medical evidence[;] I don't have any evidence of neglect or abuse. I don't have any psychological evidence. I don't have anything. I don't have diddly squat to show serious endangerment, unless I am just guessing that that might be the case."

The court entered a written order filed May 21, 2001. In the order, the court stated, "[T]he [c]ourt views [the order] as an initial determination of custody, visitation, and support, pursuant to [section 14 of the Illinois Parentage Act of 1984 (750 ILCS 45/14 (West 2000))], which requires the [c]ourt to make such determination in accordance with the relevant factors set forth in the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et[ ] seq.* [(West 2000)])." The court then proceeded to award custody to defendant and ordered plaintiff to pay child support.

The order established a visitation schedule for plaintiff that included alternate weekends, summer visitation, certain weekday evenings, and holidays and special days. The order stated:

"That the visitation schedule and privileges recited herein and awarded to [plaintiff] are found to be reasonable visitation rights in the best interests of the minor children, and no evidence has been presented which would lead the [c]ourt to conclude that such visitation would endanger seriously the children's physical, mental, moral[,] or emotional health, all as provided for in [s]ection 607 of [the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607 (West 2000))]."

Defendant appeals.

## ANALYSIS

■ Plaintiff did not file a brief in this matter. The record is simple and this court is able to decide the merits of the case without the aid of a responding brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976).

■ The resolution of this case involves an interpretation of the provisions for determining visitation under the Illinois Parentage Act of 1984 (the Parentage Act) (750 ILCS 45/14 (West 2000)). Section 14(a)(1) establishes the requirements for a judicial determination of visitation. This section reads, in part, as follows:

> "The judgment shall contain or explicitly reserve provisions concerning any duty and amount of child support and may contain provisions concerning the custody and guardianship of the child, visitation privileges with the child, [and] the furnishing of bond or other security for the payment of the judgment, which the court shall determine in accordance with the relevant factors set forth in the Illinois Marriage and Dissolution of Marriage Act and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child. In determining custody, joint custody, or visitation, the court shall apply the relevant standards of the Illinois Marriage and Dissolution of Marriage Act." 750 ILCS 45/14(a)(1) (West 2000).

■ Defendant argues that the trial court improperly failed to place the burden upon plaintiff to prove that visitation was in the best interests of the child. Section 607 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/607 (West 2000)) creates a presumption in favor of visitation, in effect placing the burden on the custodial parent. This section reads as follows:

> "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral[,] or emotional health." 750 ILCS 5/607(a) (West 2000).

The trial court's statements before the hearing indicate that it placed the burden on plaintiff. Defendant contends that in a parentage case, as opposed to a divorce, the burden should be upon the noncustodial father.

Defendant relies upon *Department of Public Aid ex rel. Gagnon-Dix v. Gagnon*, 288 Ill. App. 3d 424, 680 N.E.2d 509 (1997). In *Gagnon*, the Fourth District held that, unlike a case involving the dissolution of a marriage, the father in a parentage action bears the burden of proving that visitation is in the best interests of the child. In that case, a father sought visitation rights for a girl shortly after blood

tests determined that the girl was his daughter. The court addressed the interplay between the Parentage Act and the Marriage Act. The court quoted the relevant portion of section 14(a)(1) of the Parentage Act and rejected the conclusion that this incorporated section 607(a) of the Marriage Act. The court described the endangerment standard set forth in this section as "an onerous one." *Gagnon*, 288 Ill. App. 3d at 428, 680 N.E.2d at 512, citing *In re Marriage of Hanson*, 112 Ill. App. 3d 564, 568, 445 N.E.2d 912, 915 (1983).

The court explained its rationale for not incorporating this section of the Marriage Act:

"The reference in section 14(a)(1) of the Parentage Act to the factors set forth in the Marriage Act to determine the best interest of the child is a reference to section 602 of the Marriage Act (750 ILCS 5/602 (West 1994)), not to section 607 of the Marriage Act (750 ILCS 5/607 (West 1994)). The section 14(a)(1) reference to '*relevant* standards' makes it clear that not every rule a court would apply to a parent in a dissolution of marriage case applies with equal force to a parent in a parentage case. (Emphasis added.) 750 ILCS 45/14(a)(1) (West 1994). There is no presumption that it is in the best interest of a child to have visitation with a biological father who has had nothing to do with the child for eight years. In fact, the parental rights of an unmarried father may be terminated where he does not seek to establish paternity or pay birth expenses or provide support. 750 ILCS 50/1(D)(n)(2) (West 1994) (definition of 'unfit person'). It would be inconsistent to legislatively mandate visitation for a biological father whose parental rights could be terminated if a petition seeking that relief were filed." *Gagnon*, 288 Ill. App. 3d at 428, 680 N.E.2d at 512.

*Gagnon* held that the burden of proof should be on the noncustodial parent seeking visitation. The court noted that in some cases the request for visitation might be a vindictive response to a request for child support. The court then concluded that when the noncustodial parent has a genuine interest in the child, the benefit may justify the court awarding visitation based on the best interests of the child. The court proceeded to find that the trial court's award of visitation was appropriate because it was supported by the evidence.

■We disagree with *Gagnon*. The Parentage Act requires the court to apply the "relevant standards" of the Marriage Act to determine custody. The clear import of referring to the standards that are "relevant" is to direct the court in a parentage case to the sections of the Marriage Act that address the issue raised by the case. If the issue in a case is visitation, then the court is to apply the portions of the Marriage Act that establish standards for visitation, and likewise for custody or joint custody.

The Parentage Act makes no distinction between the standards for these issues in parentage cases and those in cases where a marriage is dissolved. Indeed, under the plain language of the Parentage Act, the same standards are to apply in both instances. If section 14(a)(1) of the Parentage Act is read as a whole, it is clear that the use of the phrase "relevant standards" is a directive to apply the corresponding standard outlined in the Marriage Act. The directional prefix to apply the standard that is "relevant" is not an invitation for a court to select only the portions of the Marriage Act it wishes to apply—it is an instruction to apply the corresponding standard established by the Marriage Act.

The structure of section 14(a)(1) further supports our stance. Section 14(a)(1) begins by requiring the court to apply the "relevant factors" of the Marriage Act "and any other applicable law of Illinois" when determining the best interests of the child for visitation, support, and bond for security. 750 ILCS 45/14(a)(1) (West 2000). In the next sentence, the section states that the "relevant standards" of the Marriage Act are to be applied when determining custody, joint custody, and visitation. The structure of the first two sentences of this section reinforces the literal application of the standards of the Marriage Act for visitation in two ways. First, the distinction between "factors" and "standards" makes it clear that both the factors for assessing the best interests of a child and the standards of proof and presumption outlined in the Marriage Act are to be applied for visitation. Further, the contrast between the first two sentences of the section illustrates that courts are limited to the standards of the Marriage Act when determining visitation. Unlike factors where "other applicable law of Illinois" may also be applied, the standards a court must use are limited to those established by the Marriage Act.

Our decision is supported by the opinion of the First District in *In re Parentage of Melton*, 314 Ill. App. 3d 476, 479, 732 N.E.2d 11, 13 (2000). In *In re Parentage of Melton*, a paternity action, a mother petitioned to remove her child from Illinois. The First District vacated a ruling by the trial court that had enjoined the mother from leaving the state. The appellate court held that the trial court lacked authority under the Parentage Act to make such an injunction.

The *In re Parentage of Melton* court addressed the interplay between the Parentage Act and the Marriage Act. The court noted that proceedings under both the Parentage Act and the Marriage Act are entirely statutory in origin and that courts have no inherent powers in parentage or divorce actions. Instead, judicial action on such matters is limited to the authority granted by the respective acts. The court noted that while the Parentage Act adopts some of the factors,

standards, and guidelines of the Marriage Act, it does not broadly confer to the court the powers granted under the Marriage Act. In particular, the Parentage Act gives no power to enjoin parents from removing children from the state.

The *In re Parentage of Melton* court discussed the nature of visitation under the Parentage Act, and it criticized *Gagnon* for ignoring the language of the Parentage Act. The court pointed out that there was no statutory authority for the shift in the burden of proof announced in *Gagnon*. The court stated that it could not accept *Gagnon*'s "strained construction of the phrase 'relevant standards.' " *In re Parentage of Melton*, 314 Ill. App. 3d at 480, 732 N.E.2d at 14. Instead, as explained by *In re Parentage of Melton*, the Parentage Act requires courts to use the standards for visitation outlined in section 607(a) of the Marriage Act.

*In re Parentage of Melton* then addressed how the policy concerns alluded to in *Gagnon* did not provide a basis for altering the relevant standards for visitation. The court saw no inconsistency between the provisions for terminating the parental rights of unmarried fathers and the statutory presumption in favor of visitation. If a parent's rights are terminated, he or she no longer benefits from the presumption in favor of visitation. On the other hand, not applying the Marriage Act's presumption in favor of visitation would be in violation of legislative directive. The court stated:

> "The court in *Gagnon* stated policy grounds for not incorporating the Marriage Act's standards for visitation into the Parentage Act. But the arguments concerning what the legislature should have done cannot change the express language of the statute incorporating 'the relevant standards' of the Marriage Act for determining visitation and 'the relevant factors' of the Marriage Act for modifying visitation. In light of the arguments presented in *Gagnon*[,] the legislature might prefer to change the Parentage Act. But we must enforce the laws enacted by the legislature, not the laws the legislature ought to have enacted." *In re Parentage of Melton*, 314 Ill. App. 3d at 480-81, 732 N.E.2d at 15.

See *Wenzelman v. Bennett*, 322 Ill. App. 3d 262, 265, 748 N.E.2d 1266, 1268 (2001) (*Gagnon* was not distinguished on the question of wedlock, but on the matter of parental involvement).

■ The resolution of this issue resolves the other questions presented by defendant in this appeal. Defendant's argument that the trial court erred in determining, prior to hearing the evidence, that plaintiff was entitled to visitation is based on the trial court's comments at the beginning of the hearing that the endangerment standard of the Marriage Act applied and that defendant had the burden of

overcoming a presumption of visitation. As our opinion makes clear, these comments were appropriate.

Defendant also contends that the award of visitation was against the manifest weight of the evidence. Defendant contends that plaintiff discussed legal issues with the children, using them as tools in the litigation, cussed and yelled in an incident, and discussed inappropriate topics with the children. At the conclusion of the hearing, the court noted that the litigation was acrimonious and that it was obvious that both parties had difficulty working with each other. The court pointed out that defendant had contested plaintiff's parentage of the children despite there being signed birth certificates. The court also stated that it found some of the testimony presented on behalf of defendant to lack credence.

Defendant claims that plaintiff abused drugs, pointing specifically to a photograph of plaintiff with a baggie and plaintiff having taken the children to a Bob Dylan concert. The court did not let the answer to this question go adrift, because the court found that, although both parties denied culpability, both were admonished to refrain from substance abuse. A review of the record supports the trial court's conclusion that defendant fell short of proving that visitation was not warranted. See *In re Marriage of Dafoe*, 324 Ill. App. 3d 254, 259, 754 N.E.2d 419, 424 (2001) (the trial court is in best position to evaluate the credibility of witnesses and the needs of a child).

## CONCLUSION

Accordingly, the order of the circuit court is hereby affirmed.

Affirmed.

KUEHN and CHAPMAN, JJ., concur.