*In re* THE MINOR CHILD ALEXIS STELLA (Patrick Stella, Petitioner, v. Pearl Garcia, Respondent (E. William Bedrava, Contemnor-Appellant)).

First District (3rd Division)    No. 1—02—0440

Opinion filed May 28, 2003.

Ariano, Hardy, Nyuli, Johnson, Richmond, Fleck, Goettel & Castillo, P.C., of Elgin (Randy K. Johnson, Paul Feinstein, and E. William Bedrava, of counsel), for appellant.

Law Office of Sue Roberts-Kurpis, P.C.(Sue Roberts-Kurpis, of counsel), and Law Office of John A. Clark (John A. Clark, of counsel), both of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

On June 1, 1997, the legislature's attempt to level the playing field for interim attorney fee awards in marriage dissolution cases went into effect. One new provision of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/501(c—1)(3) (West 2000))

empowers trial judges to allocate fees previously paid by a party to his or her lawyer for payment to the other party's lawyer. In effect, a disgorgement of attorney fees to "achieve[ ] substantial parity between the parties." 750 ILCS 5/501(c—1)(3) (West 2000).

Here, attorney E. William Bedrava was ordered by a trial judge to disgorge $20,000, part of the fee he received from his client during proceedings brought under the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 1998)) (Parentage Act). He refused. He was held in indirect civil contempt. He appeals that contempt finding. Among the issues he raises: (1) Does subsection 501(c—1)(3) apply to proceedings brought under the Parentage Act? and (2) Does subsection 501(c—1)(3) violate the federal and/or Illinois Constitution?

Because we answer the first question in the negative, we reverse the trial court's order requiring Bedrava to disgorge $20,000. We also reverse the order of contempt.

BACKGROUND

Petitioner Patrick Stella filed a petition under the Parentage Act on January 29, 1998, to establish a parent-child relationship with his daughter, Alexis. Stella originally was represented by Kim Grannen, who later was replaced by Bedrava. Respondent Pearl Garcia was not represented by counsel until November 2, 1998, when attorney Sue Roberts-Kurpis filed a motion on her behalf.

On May 22, 2000, Roberts-Kurpis filed a petition for interim attorney fees and costs under section 17 of the Parentage Act and subsection 501(c—1) and section 508 of the Marriage Act, along with an affidavit in support.[1] In addition to listing the amount of time spent on this case, Roberts-Kurpis asserted in her affidavit, among other things, she had incurred $10,000 in attorney fees defending herself against false allegations of criminal misconduct and unethical conduct brought by Stella, his parents, and Bedrava. Bedrava filed a response to the petition.

On July 31, 2000, Bedrava filed his affidavit in support of the response to the petition. In the affidavit, Bedrava said he had been paid $43,870 in connection with the case as of July 31, 2000.[2]

On August 2, 2000, Bedrava filed a motion to strike and dismiss

---

[1]The petition and various related motions were filed in the name of either Garcia or Stella as the named parties in this case. Because the real parties in interest on this matter are Bedrava and Roberts-Kurpis, we will use their names here.

[2]$42,870 of the money came from Stella's parents and was a loan to Stella. Stella's parents had intervened briefly in the parentage case requesting visita-

the petition and filed a supporting memorandum of law in which he contended subsection 501(c—1) of the Marriage Act did not apply to the Parentage Act. In her memorandum of law in support of the claim for third-party liability for attorney fees, Roberts-Kurpis argued the court should order Bedrava to disgorge a portion of the fees he received and pay the sum to her.

The court denied the motion to strike and scheduled "brief argument" on the petition. No mention of an evidentiary proceeding was made.

Bedrava issued and served a subpoena on Roberts-Kurpis advising her to appear in court on October 11, 2000, and to bring her expense records, among other things. Roberts-Kurpis filed a motion to quash this subpoena.

On October 11, 2000, the trial court found no good cause had been shown for an evidentiary hearing and it quashed the subpoenas Bedrava had served on the internal affairs division of the Chicago police department and on Roberts-Kurpis.

On March 6, 2001, the court ordered Bedrava to "disgorge in the sum of $20,000" and pay it to Roberts-Kurpis. Bedrava filed a motion to reconsider, contending the court's order was an abuse of discretion, a violation of Bedrava's due process rights, an order constituting involuntary servitude, and an impairment of contract.

On April 24, 2001, the court denied the motion. In its supporting opinion, the court found "interim attorney's fees and costs are available in a parentage case through subsection 501(c—1) of the [Marriage Act] or alternatively through section 17 of the Parentage Act using the framework set forth in subsection 501(c—1)." The court also explained it had quashed both subpoenas and, because "good cause for an evidentiary hearing had not been shown, the hearing would be summary in nature."

Bedrava then requested a technical finding of contempt and a stay, which would allow him to appeal the award of interim fees. On December 4, 2001, the court granted the motion and ordered Bedrava to pay a dollar per day for so long as he does not comply with the dis-

tion as Alexis's grandparents. On July 6, 2000, they filed a motion for voluntary dismissal for "economic reasons." Roberts-Kurpis challenged the motion on the basis that this was Stella's and Bedrava's way of "hiding behind [Stella's] personally limited financial resources while paying thousands of dollars to *** BEDRAVA." Roberts-Kurpis said this tactic was intended to avoid payment of any interim fees to her. The court granted the grandparents' motion for voluntary dismissal, but still considered their payment to Bedrava on behalf of Stella when calculating interim fees.

gorgement order. It is from this order and the disgorgement order that Bedrava appeals.

## DECISION

Bedrava contends subsection 501(c—1)(3) of the Marriage Act does not apply to the Parentage Act. This means, Bedrava says, the trial court was without authority to order him to pay interim fees to Roberts-Kurpis. Roberts-Kurpis responds that section 17 of the Parentage Act incorporates section 508 of the Marriage Act, which in turn incorporates subsection 501(c—1)(3) of the Marriage Act. Roberts-Kurpis says the court had jurisdiction to enter an order under subsection 501(c—1)(3) of the Marriage Act in a case brought under the Parentage Act. No Illinois decision directly addresses this question.

■ We review issues of statutory construction *de novo*. *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309, 753 N.E.2d 1032 (2001). In construing a statute, our goal is to effectuate the legislature's intent. *In re Marriage of Beyer*, 324 Ill. App. 3d at 309. If the language of the statute is clear, we must give effect to its plain and ordinary meaning without resorting to other aids of construction. *In re Marriage of Beyer*, 324 Ill. App. 3d at 310. We may not "supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute." *In re Marriage of Beyer*, 324 Ill. App. 3d at 309-10.

■ Actions brought under the Parentage Act are " 'entirely statutory in origin and *** the court's authority is limited thereby.' " *In re Parentage of Melton*, 314 Ill. App. 3d 476, 478-79, 732 N.E.2d 11 (2000), quoting *In re Marriage of Cohn*, 93 Ill. 2d 190, 206, 443 N.E.2d 541 (1982). The court has no inherent power in parentage cases. *In re Parentage of Melton*, 314 Ill. App. 3d at 479.

*In re Parentage of Melton* is instructive here. In that case, we considered whether the Parentage Act conferred on the court all powers conferred by the Marriage Act. In particular, the issue was whether the trial court had authority in a parentage action to issue an injunction preventing the custodial parent from removing the child from the state under the Marriage Act.

■ We noted that sections 14 and 16 of the Parentage Act adopt portions of the Marriage Act. *In re Parentage of Melton*, 314 Ill. App. 3d at 478. Section 14 expressly adopts the relevant factors set forth in the Marriage Act for judgments, especially "the guidelines and standards" for determining child support. *In re Parentage of Melton*, 314 Ill. App. 3d at 478. Section 14 also expressly authorizes trial judges hearing parentage cases to apply the "relevant standards" of the Mar-

riage Act when determining: the best interests of the child, custody, joint custody, or visitation. *In re Parentage of Melton*, 314 Ill. App. 3d at 478. Section 16 of the Parentage Act expressly adopts "the relevant factors" of the Marriage Act for modifying any order for support, custody, or visitation. *In re Parentage of Melton*, 314 Ill. App. 3d at 478.

We said, however:

> "While the Parentage Act adopts some of the factors, guidelines and standards stated in the Marriage Act, the Parentage Act does not incorporate the procedures of the Marriage Act and it does not broadly confer on the court the same powers conferred on the court in actions under the Marriage Act. \*\*\* In particular, the Parentage Act nowhere confers on the court the power to enjoin parents from removing the child from the state, *or any of the other powers conferred by subsection 501 or 501.1 of the Marriage Act.*" (Emphasis added.) *In re Parentage of Melton*, 314 Ill. App. 3d at 478.

*In re Parentage of Melton* was followed in *In re Adams*, 324 Ill. App. 3d 177, 754 N.E.2d 425 (2001). The question was whether the Parentage Act, through the Marriage Act, gives courts the power to enjoin a parent with joint custody from removing the child from the state. The court held the answer is no:

> "Although the Parentage Act has adopted some of the provisions of the Marriage Act, it does not incorporate the entire Marriage Act and does not confer the same broad powers on the court. See *Melton*, 314 Ill. App. 3d at 478, 732 N.E.2d at 13. The court has no inherent powers in parentage cases, and the court's authority to hear parentage cases is limited to the exercise of those powers that are expressly given to it by the statute." *In re Adams*, 324 Ill. App. 3d at 180.

We take *In re Parentage of Melton* and *In re Adams* to mean only those Marriage Act relevant factors and standards expressly embraced by the Parentage Act may be applied by trial judges in parentage cases. These would include a section 508 provision that permits awards of attorney fees to be paid directly to attorneys (*Heiden v. Ottinger*, 245 Ill. App. 3d 612, 616 N.E.2d 1005 (1993)), and a section 508 provision that allows a trial court to award reasonable attorney fees incurred by custodial parents during child support enforcement proceedings where the noncustodial parent's failure to pay is without cause or justification. *Davis v. Sprague*, 186 Ill. App. 3d 249, 541 N.E.2d 831 (1989). We find nothing in the pertinent statutes that expresses a legislative intent to grant trial judges the power to order disgorgement of interim fees in a Parentage Act proceeding.

■ The statute at issue here is section 17 of the Parentage Act:

"Except as otherwise provided in this Act, the court may order reasonable fees of counsel, experts, and other costs of the action, pre-trial proceedings, post-judgment proceedings to enforce or modify the judgment, and the appeal or the defense of an appeal of the judgment, *to be paid by the parties in accordance with the relevant factors specified in Section 508 of the Illinois Marriage and Dissolution of Marriage Act, as amended*." (Emphasis added.) 750 ILCS 45/17 (West 2000).

Section 508 of the Marriage Act provides, in relevant part:

"(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded *from the opposing party*, in accordance with subsection (c—1) of Section 501. At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503. Fees and costs may be awarded to counsel from a former client in accordance with subsection (c) of this Section." (Emphasis added.) 750 ILCS 5/508(a) (West 2000).

The remainder of section 508 is devoted to the enforcement of judgments or orders relating to attorney fees, final hearings for fees and costs against an attorney's own client, consent judgments, independent proceedings for fees and costs, the written agreement between attorney and client, and the applicability of the section. 750 ILCS 5/508 (West 2000).

Referring to interim attorney fees, subsection 501(c—1)(3) states, in relevant part:

"If the court finds that both parties lack financial ability or access to assets or income for reasonable attorney's fees and costs, the court (or hearing officer) shall enter an order that allocates available funds for each party's counsel, *including retainers or interim payments, or both, previously paid*, in a manner that achieves substantial parity between the parties." (Emphasis added.) 750 ILCS 5/501(c—1)(3) (West 2000).

Nowhere in section 17 of the Parentage Act did the legislature refer to disgorgement of fees. Nor does it cross-reference subsection 501(c—1) of the Marriage Act. The only cross-reference to the Marriage Act in section 17 of the Parentage Act is to section 508. More importantly, section 17 does not adopt section 508 of the Marriage Act in its entirety. Rather it expressly adopts only "the relevant factors specified in Section 508" of the Marriage Act for determining "reasonable fees of counsel, experts, and other costs." 750 ILCS 45/17 (West 2000).

Although section 508 of the Marriage Act allows the court to award interim fees from the opposing party according to subsection 501(c—1)(3), section 508 lists no "relevant factors" to consider in awarding interim fees. Nor does section 508 authorize disgorgement of fees already paid to an attorney. The mechanism under which a court may award interim fees and the power to disgorge attorney fees simply are not "relevant factors specified in Section 508" of the Marriage Act to determine "reasonable fees of counsel, experts, and other costs." Absent a clear legislative directive to the contrary, we hold section 17 of the Parentage Act does not give the courts express authority to order disgorgement under subsection 501(c—1)(3) of the Marriage Act.

The apparent purpose of subsection 501(c—1)(3) is to stop lawyers with greater resources from protracting the marriage dissolution litigation. That is, from using those greater resources as a litigation tool, outlasting an opponent until an unfair settlement is reached. See *A General Explanation of the "Leveling of the Playing Field" in Divorce Litigation Amendments*, 11-SEP CBA Rec. 32, 32 (1997). It is difficult to see how that goal would apply to Parentage Act cases.

█ The trial court in this case did not have the power to order Bedrava to disgorge money he had received from his client and then pay it to Roberts-Kurpis. The March 6, 2001, and April 24, 2001, orders directing Bedrava to disgorge $20,000 and pay it to Roberts-Kurpis are reversed. Because Bedrava sought a contempt order solely to allow review of this issue, we reverse the finding of contempt against him. *In re Marriage of Beyer*, 324 Ill. App. 3d at 322.

Because we reverse the trial court's judgments on our reading of the statutes, we need not address Bedrava's remaining contentions, particularly his constitutional challenges. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 399, 634 N.E.2d 712 (1994) ("A court will not consider the constitutionality of a statute if the case can be disposed of without determining that question").

Reversed.

HOFFMAN and HALL, JJ., concur.